**ESTATE OF Robert B. VEALE,
Deceased, Mrs. E.B. Veale, and
Megan New, Appellants,**

v.

**TELEDYNE INDUSTRIES,
INC., Appellee.**

No. C14–93–00960–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 16, 1995.

Rehearing Overruled April 6, 1995.

David L. Monroe, Houston, for appellants.

Thad T. Dameris, Raybourne Thompson, Jr., Michael J. Mucchetti, Houston, for appellees.

Before MURPHY, YATES and FOWLER, JJ.

## OPINION

FOWLER, Justice.

In this products liability case, appellants, the Estate, mother, and daughter of Robert Veale, a pilot, sued Teledyne Industries, Inc. and others, alleging that their negligence was responsible for Veale's death in an airplane crash. Appellants challenge a jury verdict in favor of appellee. In seven points of error, appellants contend the trial court erred in excluding evidence, and in applying the law of Alabama instead of Texas. We affirm because the record reflects that (1) appellants made no attempts or insufficient attempts to introduce the evidence during the trial, and (2) the jury charge applied Texas law.

Robert B. Veale (Veale) was a pilot employed by Western Atlas International, Inc. (Western). At the time of his death, Veale and another Western employee, Jim Horn, were in South America performing aerial mineral surveys for Western. Both Veale and Horn were flying Cessna 404A Titans,

with engines manufactured by appellee, Teledyne Industries, Inc. (Teledyne).

On April 15, 1989, Veale and Horn prepared to return to the United States from Cochabamba, Bolivia. In Cochabamba, their aircraft mechanic, Rick Bockelman, changed the oil on Veale's airplane. Because the attachment nut on the oil filter was over-tightened, the filter was particularly difficult to remove. Bockelman had to use a hammer and chisel to unseat the filter, and in the process punched a hole in the filter. After the oil was changed, Veale and Horn loaded their airplanes, and took off for Santa Cruz, Bolivia, en route to Lima, Peru and ultimately Houston, Texas. Evidence introduced at trial showed that Veale may have overloaded his plane by as much as 1000 pounds over the manufacturer's recommended maximum weight. In spite of this, after Veale and Horn landed in Santa Cruz, four boxes of data files and three cases of oil were transferred to Veale's plane, further increasing Veale's load.

The two planes took off from El Trompillo airport in Santa Cruz on April 19, 1989, bound for Lima, Peru. As Veale was climbing through 10,000 feet, about 42 miles from El Trompillo, he heard a "thump" and saw oil leaking from the plane's left engine. He "feathered" the engine, a procedure which shuts down the engine and eliminates drag from the non-turning propeller, and radioed the air traffic controller at El Trompillo that he had engine trouble and was returning to the airport. The air traffic controller instructed Veale to descend to 3000 feet, which he did. Horn also turned around and headed back to El Trompillo. Approximately 3 to 4 miles from El Trompillo, Veale made an unexplained 90 degree right turn and headed toward a country club. He attempted to land on the golf course, but the plane bounced on impact and exploded, killing Veale instantly.

Appellants brought suit against Teledyne, alleging that Teledyne had negligently designed and manufactured the left engine,[1] breached the engine's warranty, and violated the Deceptive Trade Practices Act. Appellants also sued Western and Thurston Aviation, Inc., the original purchaser of the engine. Thurston was later dismissed from the suit, and appellants settled with Western before trial. Additionally, Western sued Teledyne, but that suit eventually settled as well. The Estate, Mrs. Veale, and Ms. New were the only remaining plaintiffs at the time of trial, and Teledyne was the only remaining defendant.

At trial, appellants presented expert testimony that one of the left engine's connecting rod bolts had broken, causing the engine to fail. Their theory was that the bolt broke because it had been overtorqued during the engine manufacturing process, thus increasing the stresses on the bolt and causing it to fracture during the high stress of takeoff. Appellants also introduced some testimony to show that the right engine went off or was turned off shortly before the crash.

Teledyne presented a different picture for the cause of the accident. It introduced expert testimony that a piece of the punctured oil filter had plugged an oil channel in the left engine, depriving the engine of oil and causing excess friction and heat which led to the engine's failure. Teledyne's experts testified that the connecting rod bolt fractured only as a result of the high heat and stresses from oil starvation.

In addition, Teledyne presented testimony that the plane was incapable of flying on one engine because it was overloaded. Bockelman testified that after the crash, Western instructed him to perform a test flight in which he loaded an airplane up to, but not over, its maximum weight and turned off one engine during flight. The plane was unable to maintain altitude under these conditions. Thus, Teledyne argued, even if the left engine had failed due to a manufacturing defect, the *cause* of the crash was not the failure of the engine, but Veale's inability to maintain altitude with an overloaded plane flying on only one engine.

1. Although the right engine also was shut down before the crash, appellants made no claims that the right engine was defective or that the possible failure of the right engine had anything to do with the crash.

Special issue number one asked, "Did the negligence, if any, of those named below proximately cause the occurrence in question?" The jury answered "No" for Teledyne, and "Yes" for Veale. Special issue number two asked, "Was there a manufacturing defect in the Aircraft's left engine at the time it left the possession of Teledyne that was a proximate cause of the occurrence in question?" The jury answered "No." In addition, the jury found no false, misleading, deceptive or unconscionable action by Teledyne, and no breach of warranty. Because it found Teledyne not liable, the jury did not reach the issue of damages. The trial court entered a take-nothing judgment against appellants and appellants filed a timely Motion for New Trial, which the trial court denied.

In their first six points of error, appellants maintain that the trial court erred (1) in excluding evidence that the right engine of the plane was not operating prior to the crash, and (2) in overruling appellants' Motion for New Trial, urged because of the court's alleged refusal to admit the evidence. Appellants claim that the right engine testimony was important to their case because it was relevant to the issue of proximate cause and was necessary to rebut Teledyne's allegations that the plane was overloaded. They argue that the accident would never have occurred had the right engine not failed, because then Veale would have continued to the airport and landed safely.

■■■ Because appellants complain evidence was excluded, we have reviewed the entire record to determine whether error occurred. *McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex.1992). Based on our review, we overrule appellants' points of error, find-

ing that error, if any, was not preserved,[2] and if there was any error, it was harmless.

■■■ The burden is on the complaining party to present a sufficient record to the appellate court to show error requiring reversal. TEX.R.APP.P. 50(d); *Pope v. Stephenson,* 787 S.W.2d 953, 954 (Tex.1990). Appellants maintain that they preserved error. However, to preserve the error of a trial judge in excluding evidence, a party must do certain things. The party must: (1) attempt during the evidentiary portion of the trial to introduce the evidence, *Keene Corp. v. Kirk,* 870 S.W.2d 573, 581 (Tex.App.—Dallas 1993, no writ); *Lakeway Land Co. v. Kizer,* 796 S.W.2d 820, 827 (Tex.App.—Austin 1990, writ denied); (2) if an objection is lodged, specify the purpose for which it is offered and give the trial judge reasons why the evidence is admissible, *Vandever v. Goettee,* 678 S.W.2d 630, 635 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); (3) obtain a ruling from the court, *Keene Corp.,* 870 S.W.2d at 581; *Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.,* 715 S.W.2d 658, 662 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); and (4) if the judge rules the evidence inadmissible, make a record, through a bill of exceptions, of the precise evidence the party desires admitted. *Reveal v. West,* 764 S.W.2d 8, 10 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding).[3] *See also* R.APP.P. 52; *Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex.1991); *McCormick v. Texas Commerce Bank Nat'l Ass'n,* 751 S.W.2d 887, 890 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

■■■ The reasons presented to the appellate court for review must coincide with the reasons presented to the trial court for

2. Appellants contend that appellee's Motion in Limine, which sought to exclude the right engine evidence, preserves error on the trial court's ruling excluding the evidence. However, although the parties agree that a hearing was held on the Motion and that the trial court excluded the evidence, a record of the hearing and the trial court's ruling does not appear in the appellate record. A motion in limine by itself preserves nothing for review, because it merely precludes the attorneys from referring to the subject matter of the motion without first obtaining a ruling. *Hartford Accident & Indem. Co. v. McCardell,* 369 S.W.2d 331, 335 (Tex.1963); *Union Carbide Corp. v. Burton,* 618 S.W.2d 410, 415

(Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

3. In unusual cases, a litigant may vary from this procedure. *See, e.g. Durbin v. Dal–Briar Corp.,* 871 S.W.2d 263, 270–71 (Tex.App.—El Paso 1994, writ denied) (finding error not waived even though appellant did not formally attempt to introduce excluded evidence when counsel argued extensively on the issue during trial, the court made unequivocal rulings excluding the evidence both pre-trial and during the trial, and the opposing party stipulated that the evidence could be offered in a bill of exceptions).

admitting or excluding evidence. *Rhodes v. Batilla,* 848 S.W.2d 833, 847 (Tex.App.— Houston [14th Dist.] 1993, writ denied); *City of Houston v. Leach,* 819 S.W.2d 185, 191 (Tex.App.—Houston [14th Dist.] 1991, no writ); Tex.R.App.P. 52. When the record is silent as to what position appellants took at trial, it is impossible for the reviewing court to determine whether the trial court erred in excluding the evidence. *See Service Lloyds Ins. Co. v. Martin,* 855 S.W.2d 816, 824 (Tex. App.—Dallas 1993, no writ); *Gatesville Redi–Mix, Inc. v. Jones,* 787 S.W.2d 443, 446 (Tex.App.—Waco 1990, writ denied).

■ The problem with the record before this Court is that appellants failed to get enough information in the record to enable us to determine whether any error occurred. We were not present at trial and must rely on the record before us. Except for three very minor portions of testimony, there is nothing in the appellate record showing that appellants attempted to introduce any of the testimony they complain was excluded until after all testimony had been presented and the parties had closed. There also is nothing in the record showing that the trial judge knew what testimony appellants wanted to introduce until after both sides had closed subject to the bill of exceptions. Further, there is nothing in the record showing that appellants ever told the trial judge precisely why the evidence was admissible until they filed their Motion for New Trial. Finally, there is nothing in the record showing that a specific ruling to exclude the evidence was ever made, although we *assume* from the comments made by the lawyers at oral submission to this Court that the trial judge probably made a ruling concerning the evidence at some point before the trial.

Although it appears that the parties and the judge may have been operating under the same understanding regarding the evidence, we have nothing to tell us what the understanding was or what arguments were presented to the judge. Thus, for the great bulk of the evidence appellants complain was excluded, we are confronted with no offer (until after both sides had presented their cases), no stated reasons for why the evidence was admissible, and no ruling. We cannot find error with such a void of information. Therefore, we rule that appellants failed to preserve error regarding the evidence presented to the trial court by the bill of exceptions at the very end of the trial.

■ Appellants did make three offers of evidence during the evidentiary portion of trial which are included in the appellate record. The first offer was a minor excerpt from the testimony of William McKenney, an eyewitness to the crash, who testified at great length via video deposition. When appellants made the offer, the following exchange occurred:

[Appellants' counsel]: At this time, we would offer McKenney Exhibit, Page 36, Line 25 through Page 37, Line 11.

[Appellee's counsel]: That was taken up in pretrial. Motion was granted to exclude that evidence.

THE COURT: I will allow it as a Bill of Exception.

Even if we held that the exchange contained the necessary elements to preserve error and were to conclude that the testimony was admissible—questions we do not reach—we find no harm occurred by the exclusion of the testimony. The portion of the McKenney testimony that was excluded and that appellants offered at trial is contained in the bill of exceptions and reads in its entirety as follows:

Q: Okay. And what did you hear?

A: I heard an engine that was not running soundly.

Q: All right. And what—Why do you say that the engine was not running soundly?

A: The normal whine of an engine is one thing which I—I have heard before, and it was not sounding like that.

Q: All right. What did it sound like?

A: It sounded like it was coughing, spluttering, or whatever, you know, the sounds of an engine that is not functioning correctly.

This testimony is insignificant and could not have made a discernable impact on the jury, as appellant did present to the jury several pages of testimony given by McKenney concerning the right engine failure. In fact, at

one point in this testimony, McKenney went so far as to say why he knew the right engine had shut off:

> Q: Okay. So *the right engine was still running* as came [sic] across the road; is that right?
>
> A: Across, yes. I could *still hear some noise on it.*

\*   \*   \*   \*   \*   \*

After Point "S," the most impressionable sound was *the silence of this airplane going down without making any noise.* He obviously knew that he was not—*he didn't have any power at all.* And the whooshing of going through these different trees makes an incredible sound, *silent—incredible silent sound;* and then from until the first impact, *there was no sound at all* [emphasis added].

Appellants also entered into evidence and tendered to the jury the written statement McKenney provided to local authorities after the crash. In the statement he said, among other things: "Over the tee box of hole # 3 *I heard the second engine being shut down....*" (emphasis added). Because this and other similar evidence was before the jury, any potential error by the trial court in refusing to admit the "spluttering" engine testimony was harmless and not reversible error. *See Bryant v. Transcontinental Gas Pipe Line Corp.*, 821 S.W.2d 187, 188 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *Wilson v. John Frantz Co.*, 723 S.W.2d 189, 194 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

■ The second offer of evidence appellants made during the evidentiary portion of the trial is a note apparently attached to an investigative report on the crash. Appellants complain that two lines of the two-page report were redacted before the report was introduced into evidence. However, when appellants offered the report, they did not object or otherwise complain about the redactions. If the redactions were discussed between the judge and the parties and objections raised at that time, the discussions did not make it into the record. Again, in order to complain on appeal of a trial court's failure to admit evidence, the complaining party

must have made a record of a request and the trial court's failure to grant the request. TEX.R.APP.P. 52; *O'Shea v. Coronado Transmission Co.*, 656 S.W.2d 557, 564 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). The admission of the report without objection does not preserve error.

■ The third offer appellants made in the form of an offer of proof was the testimony of Jim Horn, the other pilot flying with Veale at the time of the crash. Horn testified out of the presence of the jury that in his opinion, the reason Veale turned away from the airport and toward the golf course was "because he had some type of malfunction with the aircraft, mechanical malfunction or otherwise ... I don't know what it was." This testimony makes no mention of the right engine and is ineffectual in showing that the right engine had anything to do with the crash. We again find it improbable that the jury would have reached a different verdict had it heard the above statement, in light of McKenney's concrete testimony that the right engine was shut off at the time of the crash. Without a showing that the exclusion of evidence was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment, any potential error was harmless. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989); TEX. R.APP.P. 81(b)(1).

Appellants have failed to preserve error on the issue of whether the trial court erred in excluding the right engine evidence. Accordingly, we overrule points of error one through six.

■ In their seventh point of error, appellants claim the trial court erred in applying the law of Alabama rather than that of Texas. Appellants urge us to remand the case and order the trial court to apply Texas law to this case. However, the record shows that Texas law *was* applied. Although the trial court told the parties that he would apply Alabama law, the questions submitted to the jury in the court's charge are taken word for word from the Texas Pattern Jury

Charges.[4] *See* 1, 3, 4 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES (1987, 1989, 1990). *Compare* ALABAMA PATTERN JURY INSTRUCTIONS, CIVIL (Lawyers Cooperative Pub. Co. 1974). Appellants received precisely what they desired—the application of Texas law to their claims; therefore, they have not proven they were harmed by the trial court's unimplemented ruling. TEX.R.APP.P. 81(b)(1); *see also Hunter v. NCNB Texas Nat'l Bank,* 857 S.W.2d 722, 725 (Tex.App.—Houston [14th Dist.] 1993, writ denied) (holding appellant not harmed when trial court's sua sponte severance order accomplished her desire to separate her cross-action from other issues). We hold that even if the trial court erred, there was no showing of harm to the appellants. We overrule appellants' seventh point of error.

Because we have overruled all of appellants' points of error, we have no need to address appellee's conditional cross points.

The judgment of the trial court is affirmed.

---

4. The charge contained a definition for "assumption of risk" and used the term in one of the comparative negligence questions the jury did not reach. Although assumption of risk is not taken from the pattern jury charges, it is an application of Texas law. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 428 (Tex.1984).