Edwin A. **MELENDEZ**, Sr., Appellant,

v.

**EXXON CORPORATION d/b/a Exxon Chemical Americas and d/b/a Exxon Chemical Company, Appellees.**

No. 14–96–01526–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 27, 1999.

Valorie W. Davenport, Houston, for appellant.

F. Walter Conrad, Teresa Slowen Valderrama, Jacalyn Ann Hollabaugh, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN and WITTIG.

## OPINION

WITTIG, Justice.

This is an appeal from a take nothing judgment rendered pursuant to a jury verdict in appellant's wrongful discharge suit against Exxon Corporation. Melendez brings sixteen points of error. We affirm the trial court's judgment.

### Facts

In the late 1980s, Melendez worked as a manufacturing technician at Exxon's Baytown Olefins plant. This plant manufactures chemicals, called olefins, from hydrocarbons. These hydrocarbons enter the plant through flow meters that measure the amount of product purchased and then pass it into process units, which change the chemicals into olefins. The finished product then leaves the plant through the flow meters to measure the amount of product Exxon sells.

The process units produce waste gases which are vented from the units through a network of enclosed pipes called "headers." A header from each unit feeds into a main header, which carries waste gases to a flare, where they are burned. The Exxon flare loss monitoring program measures losses to locate leaks and to meet state and federal standards. The first step in this program is performed by a technician, who takes a gas sample from each header and injects this sample into a gas chromatograph, which prints out a report identifying the chemical components of the sample. The technician then plugs the figures from this printout into a pre-established mathematical formula to determine flow rate and amount of hydrocarbons coming from each header. This is called the "flare loss report," which is then given to a "con-

tact engineer," responsible for a particular process unit. This engineer reviews the raw data and inserts it into a program that estimates total losses for the month. The engineer's report then goes to accounting. This data is also used in emissions reports to governmental agencies.

From 1988–1991, Melendez was the flare loss technician in charge of taking gas samples from the headers and running these samples through the gas chromatograph. Melendez alleged that, in the late 1980s, Exxon began using a method of calculating "back-mixing" that violated its emissions permits. Specifically, Melendez claimed Exxon began subtracting certain gases from the flare loss report even though Melendez's sample data indicated they were present in the butadiene header. Melendez also alleged concerns about "on purpose venting," which is the intentional venting of material from the butadiene header to the flare to be burned. Melendez claimed toxic gases were being vented to the flare and, because the flare was not always lit, toxic gases were being emitted into the air, undiluted and undestroyed.

Melendez voiced his concerns to various agencies, including TACB and the United States Environmental Protection Agency (EPA). Melendez also complained that exposure to toxic materials was harming his liver function. Exxon contended that, because of his health complaints, Melendez was transferred to the tool room when a position became available; however, Melendez alleged that he continued to be exposed to toxic materials in the tool room. Melendez alleged that, until he complained about the back-mixing and the on-purpose venting, there had never been any complaints about his job performance. Melendez was fired in April 1992. Exxon claimed that Melendez was terminated for insubordination.

Melendez filed suit against Exxon, alleging he had been discharged for refusing to perform an illegal act. Melendez claimed that the back-mixing calculations were illegal and that he was forced to commit an

illegal act because he had the responsibility of obtaining data that was used in reports to governmental agencies. Alternatively, he alleged he was discharged in violation of public policy for reporting Exxon's illegal activities to state and federal agencies. Melendez also alleged claims for fraud and intentional infliction of emotional distress. The trial court sustained Exxon's special exceptions to the "private whistle blower" claim. The remaining claims were submitted to a jury. The jury found in favor of Exxon and the trial judge rendered a take nothing judgment in favor of Exxon.

### Private Whistle blower Claim

■ In his first point of error, Melendez challenges the trial court's grant of special exceptions and the striking of his private whistle blower claim. Melendez concedes that a majority of the supreme court recently declined to adopt a cause of action for private whistle blowers. *See Austin v. Health Trust, Inc.*, 967 S.W.2d 400 (Tex. 1998). Despite this holding, Melendez claims the facts in this case call for adoption of a private whistle blower cause of action, as suggested in the concurring opinion in *Austin. See id.* at 404.

Exxon asserts that, when it filed its special exceptions, the overwhelming weight of authority held there was no cause of action for private whistle blowers. Alternatively, Exxon also contends Melendez abandoned this claim by omitting it from his third amended petition.

■ Turning first to Exxon's preservation argument, case law holds that when special exceptions are sustained the pleader has two options: (1) amend his pleading, or (2) refuse to amend and appeal the ruling. *Geochem Laboratories, Inc. v. Brown & Ruth Laboratories, Inc.*, 689 S.W.2d 288, 289–90 (Tex. App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.). If the

pleader refuses to amend his pleading, the trial court may strike the objectionable portion of the pleading or dismiss the suit if the remaining allegations fail to state a cause of action. *Id.* at 290.

Exxon contends that, by amending his pleadings after the trial court sustained the special exceptions, Melendez has preserved nothing for review, citing *Long v. Tascosa Nat'l Bank*, 678 S.W.2d 699, 703 (Tex.App.-Amarillo 1984, no writ); *Gage v. Langford*, 615 S.W.2d 934 (Tex.Civ.App.-Eastland 1981, writ ref'd n.r.e.); and *Cornish v. Houston Terminal Land Co.*, 257 S.W. 575 (Tex.Civ.App.-Galveston 1923, no writ). Although these cases involve the sustaining of special exceptions, none involves a trial court's strike of a portion of the pleading.

In a written order, the trial court sustained Exxon's special exceptions and specifically struck the paragraph containing that cause of action. *See* TEX.R.CIV.P. 91. When appellant later filed a third amended petition, he did not include the paragraph struck by the court. It makes little sense to hold that appellant could only preserve error by violating a court order and re-pleading a cause of action the trial court had struck by written order.[1] Similarly, an appellant should not have to forgo any future amendments to other causes of action if he wished to preserve error on the stricken claim. Accordingly, we find no waiver under these circumstances and we turn to the merits of Melendez's complaint

■ Special exceptions are a means of questioning the legal sufficiency of a plaintiff's petition. *See Burgess v. El Paso Cancer Treatment Center*, 881 S.W.2d 552, 554 (Tex.App.-El Paso 1994, writ denied). In reviewing a court's order sustaining special exceptions, we must determine whether the trial court abused its discre-

---

1. We are not inclined to hold that Melendez should have violated the court's order and repled the private whistle blower claim. If he had violated the court's order, he would have· been subject to penalties, including sanctions or contempt. *See Hayes v. Hayes*, 920 S.W.2d 344, 346 (Tex.App.-Texarkana 1996, writ denied).

tion. *See Austin v. Houston Lighting & Power Co.*, 844 S.W.2d 773, 783 (Tex.App.-Dallas 1992, writ denied). A court abuses its discretion when it acts without reference to guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

Melendez concedes that Texas does not presently recognize a cause of action such as that alleged in his petition. In *Austin v. Health Trust, Inc.*, 967 S.W.2d 400 (Tex. 1998), the court considered whether to recognize a private whistle blower cause of action. The court observed that it had declined past requests to recognize such a cause of action. *Id.* at 401. The court also observed that the Legislature had enacted a number of statutes protecting specific class of employees from various types of retaliation. *Id.* Although the *Austin* appellant sought a narrowly drawn cause of action, the court chose to leave the task of crafting remedies for retaliation by employers to the Legislature rather than to recognize a common law cause of action that would effectively emasculate a number of statutory schemes. *Id.* at 403.

■ Despite the holding in *Austin*, Melendez urges us to recognize a private whistle blower action under the circumstances presented here because, absent such protection, Melendez claims public and governmental agencies will probably never know about alleged unlawful, illegal chemical discharges. In support of recognition of a remedy in this case, Melendez cites to the concurrence in *Austin*. The concurring justices, observing that the appellant in the *Austin* case had a statutory remedy, stated:

> Accordingly, this is not a compelling scenario of injustice that requires us to modify the long-standing employment-at-will doctrine.

However, such a compelling situation may present itself in the future, and when it does, it will be incumbent on this Court to once again, as we did in *Sabine Pilot,* carry its "burden and the duty of amending [the doctrine] to reflect social and economic changes."

*Id.* at 404 (quoting *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985)).

Melendez asserts that, according to his research, his is the only pending case involving both conduct posing a claimed threat to public safety and health and an employee report of suspected illegal conduct to appropriate governmental agencies. Unlike the appellant in *Austin,* Melendez has no Texas statutory retaliation remedy.[2]

We too decline Melendez's invitation to expand common law exceptions to the employment-at-will doctrine under these facts. Although Melendez had no Texas statutory remedies, he does have remedies under federal statutes and has pursued these remedies. Our facts are very similar to those in *Austin.* Like Melendez, the appellant in *Austin* sought a "cause of action in which the conduct or activity that was reported [to governmental agencies] would have a 'probable adverse effect upon the public." *Austin,* 967 S.W.2d at 401 (quoting *Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723 (Tex. 1990)). As the supreme court concluded in *Austin,* "we leave to the Legislature the task of crafting remedies for retaliation by employers." *Id.* at 403. Because the trial court followed existing law in sustaining Exxon's special exceptions, it committed no abuse its discretion. We overrule point of error one.

### Exclusion of Testimony Regarding the Reporting of Violations

■ Melendez next asserts the trial court abused its discretion in excluding

**2.** Melendez did, however, file a retaliation complaint under the federal Air Act and the Toxic Substances Control Act. These complaints were tried before an administrative law judge who recommended that the complaint be dismissed. Melendez avers that this decision is merely a recommendation, which is to be reviewed by the Secretary of Labor, and that no decision has yet been made by the Secretary.

Melendez's testimony regarding his report of violations relevant to his claims. Melendez claims that, even if no private whistle blower cause of action is recognized, this testimony was relevant to his claim he was terminated for refusing to commit an illegal act.

The exclusion of evidence is committed to the discretion of the trial court. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex.1995). Any error in the exclusion of evidence is not reversible unless the appellant shows the error probably caused rendition of an improper judgment. *See McCraw v. Maris*, 828 S.W.2d 756, 757–58 (Tex.1992). Generally, exclusion of evidence is not reversible error unless the complaining party demonstrates that the whole case turns on the particular evidence excluded. *See Bean v. Baxter Healthcare Corp.*, 965 S.W.2d 656, 659 (Tex. App.-Houston [14th Dist.] 1998, no pet.); *Shenandoah Assoc. v. J & K Properties, Inc.*, 741 S.W.2d 470, 490 (Tex. App.-Dallas 1987, writ denied). In deciding whether the exclusion of the evidence probably resulted in rendition of an improper judgment, the court must review the entire record. *See City of Brownsville*, 897 S.W.2d at 754.

To establish wrongful discharge for refusal to perform an illegal act, a plaintiff must show that his discharge was for no reason other than his refusal to perform an illegal act. *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex. 1985). Melendez claims that this cause of action "often involves a hybrid scenario" including both a *Sabine Pilot* claim and a whistle blower claim, where a plaintiff is terminated for reporting his employers illegal act to the government. While it may be true that a plaintiff raising a *Sabine Pilot* claim may have also reported illegal acts to a governmental agency, this is not an element of wrongful discharge for refusal to perform an illegal act. If a court allowed testimony of the report of illegal actions, the jury would be considering evidence supporting a whistle blower claim

that is not recognized in Texas. Thus, we find it was not error to exclude this testimony.

Furthermore, the record indicates Melendez and his wife testified on several occasions of Melendez's reports to the TACB and the EPA. If further testimony about the reporting was crucial, a bill of exceptions would have preserved the substance of that evidence for review. The burden is on the complaining party to present a sufficient record to the appellate court to show error requiring reversal. *Estate of Veale v. Teledyne Indus., Inc.*, 899 S.W.2d 239, 242 (Tex. App.-Houston [14th Dist.] 1995, writ denied). To preserve error in the exclusion of evidence, a party must do the following: (I) attempt to introduce the evidence, (2) if an objection is lodged, specify the purpose for which the evidence is offered and specify reasons why the evidence is admissible, (3) obtain a ruling, and (4) if the judge rules the evidence inadmissible, make a record, through a bill of exceptions, of the precise evidence the party desires admitted. *Id.* Because Melendez does not point to any bill of exceptions in the record and we have located none, we find this complaint is not preserved. We overrule point of error two.

### Exclusion of Testimony of Andrew Lundgren and Documents Regarding Emissions

In point of error three, Melendez claims the trial court abused its discretion by excluding the testimony of Exxon employee, Andrew Lundgren, an environmental coordinator at the Baytown plant. Melendez concedes that Lundgren was named as a potential witness in a supplemental response to interrogatories filed less than 30 days before trial. Nonetheless, Melendez claims there was good cause for the late supplementation. In point of error twelve, Melendez contends the trial court abused its discretion in refusing to admit a letter, written by Lundgren, and other

documents confirming Exxon's long history of "errors" in reporting its emissions. Melendez claims these documents were admissible as substantive evidence and for impeachment of Exxon's position that Exxon was in compliance with its permit and other governmental standards.

The Rules of Civil Procedure prescribe when a party has a duty to supplement a response to a discovery request. TEX. R.CIV.P. 166b(6).[3] In particular, a party who expects to call an expert witness must supplement a discovery response to disclose this witness not less than 30 days before trial. *See id.* at (6)(b). A party who fails to supplement a discovery response is not entitled to present evidence which the party was under a duty to provide in a supplemental response unless the trial court finds good cause sufficient to require admission, *See* TEX.R.CIV.P. 215.5. The burden of establishing good cause is on the party attempting to introduce the evidence or call the witness. id.

After the case was filed, the trial court entered a scheduling order, setting a discovery deadline thirty days before trial was scheduled to begin. In January 1996, the trial judge entered an order resetting trial for July 8, 1996. This order stated: "Unless a new scheduling order is requested, all previous pre-trial deadlines remain in effect" Thus, in addition to being required by the rules to supplement discovery responses not less than thirty days before trial, Melendez was required by order of the trial court to supplement discovery not less than thirty days before trial.

Melendez argues that the 30th day before the July 8th trial date fell on Saturday, June 8, 1996, and therefore, Rule 4 allowed the filing of the supplemental discovery response on the following Monday, the 28th day before trial. Rule 4 provides for the computation of time periods prescribed by the rules and states that the first day of a time period is not to be

counted, but the last day of the period is to be included unless it is a Saturday, Sunday, or legal holiday. TEX.R.CIV.P.4. If the last day of the period is a Saturday, Sunday, or legal holiday, Rule 4 provides that the period runs until the end of the next day which is not a Saturday, Sunday or legal holiday. *Id.*

Some courts have held that Rule 4 does not apply to time periods that are counted backward. *See, e.g., Reichhold Chemicals, Inc. v. Puremco Mfg. Co.,* 854 S.W.2d 240, 246–47 (Tex.App.-Waco 1993, writ denied). The supreme court apparently overruled these cases in *Lewis v. Blake,* 876 S.W.2d 314, 316 (Tex.1994). *See Sosa v. Central Power & Light,* 909 S.W.2d 893, 895 (Tex. 1995) (reiterating that *Lewis* held Rule 4 applies to any period of time prescribed by the rules of procedure and holding that Rule 4 applies to the time period in Rule 63 regarding amendment of pleadings). In *Lewis,* the court was emphatic: "Rule 4 could not be plainer: it applies to *any* period of time prescribed by the rules of procedure. . . ." 876 S.W.2d at 316.

*In Sosa,* the supreme court applied Rule 4 to the time period in Rule 63, which precludes the filing of pleadings within seven days of the date of trial unless leave of court is obtained. *Id.* (citing TEX. R.CIV.P. 63). In applying Rule 4, the court counted from the day on which the Sosas filed their amended petition, and held that this day was not counted, but that the seventh day after it was filed was counted. *Id.* Thus, the court determined that the Sosa's petition was timely filed even though the seventh day was the day of the hearing. *Id.*

Because the supreme court held that Rule 4 applies to *any* time period prescribed in the Rules of Civil Procedure, we apply it here and count forward, as the supreme court did in *Sosa.* Rule 166b(6) requires supplementation of a discovery response "not less than thirty days prior to

---

**3.** Because this case was tried in 1996, we cite to the rules in effect at that time rather than

the rules that became effective January 1, 1999.

the beginning of trial unless the court finds that good cause exists for permitting or requiring later supplementation." TEX.R.CIV.P. 166b(6). Thus, a discovery response is timely under this rule if it is filed 30 days or more before the date set for trial. Melendez did not supplement his discovery response to list Lundgren as a potential witness until June 10, 1996. Applying the procedure from *Sosa*, the day on which Melendez filed his response is not counted but the thirtieth day after it was filed is counted. *See Sosa*, 909 S.W.2d at 895. The thirtieth day would have been July 10, 1996, two days after trial began. Therefore, Melendez's supplemental response was not filed within the period prescribed by Rule 166b(6).

Counting backward, Melendez argues that the thirtieth day before trial would have been Saturday, June 8, 1996, and Rule 4 should allow this to be extended to the following Monday. Following the reasoning in *Sosa*, however, Rule 4 does not count time periods backward. The supreme court counted the day after the date of filing as the first day of the period, and counted the last day of the period. 909 S.W.2d at 895. Rule 4 only allows extension of a time period if the *last* day of a time period is a Saturday, Sunday, or legal holiday. TEX.R.CIV.P. 4. In our case, the first day of the time period is a Saturday, and Rule 4 does not provide for extension of the first day of a time period.

■ Because Melendez filed his discovery response naming Lundgren less than thirty days before trial, he could avoid exclusion of the evidence only if he established good cause for the delay. TEX. R.CIV.P. 166b(6). The record indicates Melendez's counsel told the trial court that they discovered Lundgren had knowledge of relevant facts in March 1996, when they located a letter written by Lundgren in documents produced by Exxon. Counsel also argued the late discovery was due to late-generated evidence and late admissions by Exxon. Although Melendez's counsel stated she was aware in March

that Lundgren might be a potential witness, he does not explain why she waited until June to supplement his discovery response. Accordingly, we hold that Melendez did not establish good cause to allow the late supplementation of the discovery response listing Lundgren.

■ Melendez also contends Lundgren was called as a rebuttal witness to refute the testimony of Kevin Smith regarding Exxon's emission reports. In *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 916 (Tex. 1992), the court held that the mere tactical decision of the offering party to bring a witness on rebuttal rather than during the case in chief does not establish good cause for failing to supplement discovery. The court added that, although not present in the Alvarado case, circumstances might exist to establish good cause for admitting testimony of an undisclosed witness on rebuttal, as for example, when the need for the testimony could not reasonably have been anticipated. *Id.* at 916 n. 6.

Such unforeseen circumstances were found to exist in *Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2 (Tex.1994). In *Bullock*, the plaintiff's expert testified to a conclusion substantially different from that given in her deposition. *Id.* Based on this material and unanticipated change in the expert's opinion, the trial court permitted Alcoa to introduce the testimony of two other experts previously designated by the plaintiffs, but not by Alcoa. *Id.* The supreme court found no abuse of discretion by the trial court in allowing the testimony of these experts under these circumstances. *Id.*

No one argues there was an unanticipated change in testimony requiring the rebuttal testimony of Lundgren. Instead, Melendez's counsel argues only about the late discovery of Lundgren. This does not establish the type of good cause described in *Alvarado* and *Bullock*. We find no abuse of discretion by the trial court in excluding Lundgren's testimony. We overrule points of error three and twelve.

## Exclusion of Testimony
## of Dr. Neil Carmen

In point of error four, Melendez claims the trial court abused its discretion in disallowing or limiting the testimony of Dr. Neil Carmen and the documents he produced at trial. Melendez claims his designation of this expert was broad enough to include the testimony of all air emission violations and was relevant to impeach Exxon's credibility, to show the effect of "on-purpose venting," and to show background and context of Melendez's concerns and claims.

Exxon moved to strike Dr. Carmen's testimony on the ground that he was not qualified under the *Robinson* and *Daubert* standards. After testimony was given outside the presence of the jury in a bill of exceptions, the court granted the motion to strike, or alternatively, to limit Dr. Carmen's testimony. The court observed that the designation of the witness did not fully inform the defendant of the scope of Dr. Carmen's testimony and, for this reason, the court ordered a deposition taken to give the defendant an opportunity to determine Dr. Carmen's knowledge and ability to testify. The court stated it would permit Dr. Carmen to testify only in connection with the flare loss calculations and the back-mixing losses or calculations. The court also ruled that two exhibits regarding amendments to Exxon's emissions permits would not be admitted.

Exxon argues that Melendez's discussion of this point of error does not cite to the location in the record for the documents excluded, but only generally refers to evidence excluded, and cites no authority to support his complaint. Accordingly, Exxon claims the point of error is waived. Although Melendez does not cite to the standard of review for the exclusion of evidence, he does cite to the record for most of his discussion of the evidence. Therefore, we will address his complaint.

In his supplemental discovery response, Melendez described Dr. Carmen as a witness with "expert knowledge regarding environmental compliance with government regulations and other matters concerning his field of expertise." Exxon moved to strike Dr. Carmen as unqualified because he is not a chemical engineer, but has a degree in botany. Dr. Carmen did work for the TACB and is now a consultant for the Sierra Club. Melendez claims he wanted Dr. Carmen to testify about Exxon's compliance with environmental regulations related to air emissions. This appears to refer to the excluded March 13, 1996, letter (mentioned above under point of error twelve) requesting an amendment to Exxon's permit for emissions. Exxon objected to this document on the ground it was dated four years after Melendez left Exxon and was irrelevant to the time period when Melendez worked at Exxon. Exxon also questioned Dr. Carmen about this letter and its statement that seven earlier permits were consolidated into a single permit in 1995. Dr. Carmen admitted that he did not know the total emission allowables of the seven prior permits, he was never involved with the TACB section to which this letter is addressed, and he did not know if TACB had "agreed entirely with Exxon and corrected what amounted to a clerical error. . . ." Dr. Carmen admitted he was unaware of any enforcement action taken by TACB against Exxon for the error in emissions calculations of 1995.

The back-mixing calculation was the only act Melendez testified he refused to perform because he believed it was illegal. The trial court limited Dr. Carmen's testimony to that claim. Melendez argues that Dr. Carmen's testimony about emissions violations was crucial to his case and the exclusion of it was harmful because the jury found that Exxon did not attempt to have Melendez commit an illegal act. The evidence Dr. Carmen would have provided concerned alleged violations of emissions permits by Exxon and does not establish that Exxon attempted to require Melendez to perform some illegal act with respect to those emissions. Therefore, we find that Melendez has not shown that this evidence

was relevant to his case or that the exclusion of this evidence was harmful. We overrule point of error four.

### Exclusion of Evidence Regarding Community Relations

■ In points of error five through seven, Melendez complains of the trial court's exclusion of evidence regarding the local community's reaction to publication of Exxon's release of toxic chemicals into the environment, the response to this public reaction by Exxon management, and Exxon's Community Information Booklet. Melendez claims this evidence is relevant to Exxon's motive for its treatment of Melendez. Melendez contends Exxon transferred him to another area of the plant and later fired him because Exxon believed Melendez was raising concerns about actions for which Exxon was already experiencing compliance difficulties and negative community reactions.

■ In response, Exxon argues that Melendez did not preserve error because he did not make an offer of proof. The burden is on the complaining party to present a sufficient record to the appellate court to show error requiring reversal. *Estate of Veale v. Teledyne Indus., Inc.,* 899 S.W.2d 239, 242 (Tex. App.-Houston [14th Dist.] 1995, writ denied). If the trial judge sustains an objection and rules the evidence inadmissible, an appellant must preserve error by making a record, through a bill of exceptions, of the precise evidence the party desires admitted. *Id.* The purpose of the offer of proof is to present the substance of the testimony, to assist both the trial court in ruling on the objection and the appellate court in reviewing the trial court's ruling.

■ When the substance of the evidence is apparent from the context within which questions were asked, an offer of proof is not required to preserve error. *See* TEX.R.EVID. 103(a)(2); *Chance v. Chance,* 911 S.W.2d 40, 52 (Tex.App.-Beaumont 1995, writ denied). Melendez attempted to offer the testimony of Richard Abraham, head of the Texans United Education Fund, a public interest environmental organization. As Melendez indicates, Abraham did testify in front of the jury. Although the trial court sustained objections to the vast majority of the questions asked by Melendez's counsel, the substance of the testimony to be offered is apparent from the questions asked.

Melendez contends Abraham's testimony regarding the community's concerns was relevant because it established Exxon's motive for transferring and then firing Melendez. Melendez further argues that Exxon's public relations problem was relevant to its position and credibility with respect to the legality of back-mixing and on-purpose venting.

When Melendez's counsel asked Abraham about the "tone in the community with regard to the flare system at the Baytown Olefins plant" during the time in question, the court sustained an objection on the ground this question asked for speculation. When Abraham was asked if he personally discussed community concerns with members of the plant management, the trial court sustained a hearsay objection. When Abraham testified he personally investigated the concerns of the community with regard to the Exxon facility, the court sustained an objection that the concerns of the community were not an issue in the case. Melendez's counsel did not respond to this objection. The court sustained an objection based on speculation when Abraham was asked about the community reaction to published reports of the amounts of toxic chemicals released by the Exxon facility into the environment. The trial court further sustained a speculation and hearsay objection to the question whether Exxon responded to press releases trying to minimize the effect of the numbers.

Thus, most of the evidence Melendez claims was relevant was not excluded for lack of relevance, but for its speculative and hearsay nature. Melendez has not

demonstrated that the excluded testimony was not speculative. Because Exxon does not address in its brief the hearsay objections, Melendez contends "Exxon did not preserver [sic] error on its relevancy argument." Exxon is not the appealing party and therefore, does not have to preserve error.

 Concerning the hearsay objections, Melendez argues that the question called for an admission by a party opponent or a statement against interest and therefore, did not call for hearsay. To constitute an admission of a party opponent against his interest, the statement must be relevant to a material issue in the case and be inconsistent with the position of the party against whom it is introduced. *Westchester Fire Ins. Co. v. Lowe*, 888 S.W.2d 243, 249–50 (Tex.App.-Beaumont 1994, no writ). Melendez has not established that the questions to which the court sustained a hearsay objection called for a statement inconsistent with Exxon's position. In fact, Melendez merely concludes, with no analysis, that the question called for an admission of a party opponent. We find Melendez has not established error by the trial court as to the hearsay objections.

 Further, Melendez's arguments regarding the relevance of the community reaction are not persuasive. Whether or not the community was unhappy with the alleged environmental pollution emanating from the Exxon facility is not material to Melendez's claim that Exxon's back-mixing calculations were illegal. Finding no abuse of discretion in the exclusion of Abraham's testimony, we overrule points of error five through seven.

## Jury Misconduct

 In points of error eight and nine, Melendez claims the trial court abused its discretion in allowing a juror to sleep during testimony and in refusing to discharge the sleeping juror. Melendez raised this complaint for the first time in his motion for new trial.

In support of his argument, Melendez cites to criminal cases in which peremptory challenges were used to strike jurors who were inattentive or sleeping during voir dire. *See, e.g., Daniels v. State*, 768 S.W.2d 314, 317 (Tex.App.-Tyler 1988, pet. ref'd). Because the cases cited by Melendez concern *Batson* challenges, the analysis is inapplicable here.

Exxon claims Melendez waived any error by failing to object or bring this matter to the court's attention during trial. The only case cited by Exxon that does not involve voir dire juror misconduct is *Alamo Carriage Serv., Inc. v. City of San Antonio*, 768 S.W.2d 937 (Tex.App.-San Antonio 1989, no writ). In *Alamo Carriage*, the appellant claimed juror misconduct in his motion for new trial. *Id.* at 942–43. Because the appellant made no objection at the time of the incident or before the verdict, the appellate court overruled the complaint, stating:

> We believe that it would be wantonly unfair to allow a litigant to take his chances with the jury and later complain of misconduct when he is unhappy with the result. A party may not speculate on the result of a verdict and then for the first time complain of jury misconduct.

*Id.* at 943.

In the present case, Melendez did not object during trial about the sleeping juror and give the trial court an opportunity to rule. Instead, Melendez raised his complaint in his motion for new trial. Under these circumstances, we find the point of error not preserved because Melendez did not object at the time of the alleged jury misconduct. We overrule points of error eight and nine.

 In point of error ten, Melendez claims the trial court abused its discretion by failing to grant a new trial in light of jury misconduct that was material and caused injury. Under this point of error,

Melendez presents one sentence of argument: "The jury misconduct consisted of failing to follow court's instructions, failing to write out and deliver to the judge a request for certain testimony, the existence of undue pressure to render a verdict, failing to consider the evidence, failing to read the court's charge, failing to render a verdict based on the evidence and failing to properly deliberate." There are no citations to the record, no explanations of these alleged instances of misconduct, and no citations to authority.

■ The argument in a brief must contain a clear argument for the contentions made, with appropriate citations to the record and to authorities. TEX. R.APP.P. 38.1(h). A point of error not supported by authority is waived. *Rendleman v. Clarke*, 909 S.W.2d 56, 59 (Tex. App.-Houston [14th Dist.] 1995, writ dism'd as moot). Furthermore, the court has no duty to search a voluminous record without guidance from the appellant to determine whether an assertion of reversible error is valid. *Id.* The failure to cite to relevant portions of the trial court record waives appellate review. *Id.; Tacon Mech. Contractors v. Grant Sheet Metal, Inc.*, 889 S.W.2d 666, 671 (Tex. App.-Houston [14th Dist.] 1994, writ denied). Based on this authority, we hold that Melendez has waived this complaint. We overrule point of error ten.

### Improper Jury Argument

■ In point of error eleven, Melendez claims it was reversible error for Exxon to argue that neither the EPA nor the Texas Air Control Board had found Exxon to be in violation of any air emission laws. Melendez notes he objected during argument and raised this complaint in his motion for new trial. In response to his objections, the trial court instructed the jury to decide the case only from the evidence they heard from the witness stand under oath.

■ The standard of review for improper jury argument requires reversal under the following circumstances: (1) there is error in the argument, (2) it was not invited or provoked, (3) the error was preserved by an objection, motion for mistrial, or motion to instruct, (4) the error was not curable by instruction, reprimand by the judge, or proper withdrawal of the statement, and (5) the argument by its nature, degree and extent constituted reversible harmful error. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979). Incurable jury argument occurs when comments are so inflammatory that their harmful nature cannot be cured by an instruction to disregard. *National Union Fire Ins. Co. v. Kwiatkowski*, 915 S.W.2d 662, 664 (Tex. App.-Houston [14th Dist.] 1996, no writ). The appellate court must closely examine all of the evidence to determine the argument's probable effect on a material finding. *Id.* at 840. "From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence." *Id.*

■ Melendez's counsel objected whenever Exxon's counsel began to argue that no violations were found by the agencies. At these times, Exxon's counsel did not finish the allegedly objectionable argument and the trial judge instructed the jury to decide the case based only on the evidence. Exxon's counsel only completed one statement regarding agency findings and this occurred while he was discussing Melendez's allegation about damage to his liver from overexposure to certain chemicals.[4] Although Melendez claims this was

---

4. This argument is as follows:

 [Exxon's Counsel]: Leslie Davis, the nurse, if you remember the nurse that came in here, testified if Mr. Melendez complained about anything to her, she wrote it down.

 You can look at those medical records if you want, and there's only this complaint about the degreaser that the OSHA people came out and looked at and said it's not an overexposure.

incurable argument, we disagree. Incurable argument is typically found where the argument involves inflammatory or prejudicial statements. *See, e.g., Texas Employers Ins. Ass'n v. Haywood,* 153 Tex. 242, 266 S.W.2d 856 (1954) (appeal to racial prejudice); *Southwestern Greyhound Lines, Inc. v. Dickson,* 149 Tex. 599, 236 S.W.2d 115 (1951) (use of epithets, "liar," "fraud," "faker," "cheat," and "imposter"); *Howsley & Jacobs v. Kendall,* 376 S.W.2d 562 (Tex.1964) (unsupported charge of perjury). In contrast, the statements by Exxon's counsel, even if they were error, were not so harmful that they could not be cured by instruction.

■ Furthermore, Melendez has not demonstrated that the probability the improper argument caused harm is greater than the probability the verdict was grounded on the evidence. Exxon put two employee engineers on the witness stand, who testified that Melendez was not asked to perform any back-mixing calculations because these were done by the contact engineer. Although the testimony of these witnesses was disputed concerning the legality of back-mixing calculations, this is evidence supporting the jury's findings. Furthermore, Melendez's witness, Dr. Carman, testified that he was not aware of any violations issued as a result of the back-mixing calculations or on-purpose venting. There is also evidence supporting Exxon's explanation of why Melendez was transferred and later terminated. Melendez made his health complaints known to Exxon and Exxon's doctor recommended the transfer. The evidence further shows Melendez was transferred when a position became available and Melendez was ultimately terminated for continued insubordination, including his refusal to complete permit training, missing a CAT team meeting, and leaving work without advising his superiors why he was leaving. Based on a review of the entire record, we find no harm resulting from the jury argument made by Exxon's counsel. Therefore, we overrule point of error eleven.

### Instructions to the Jury

■ In point of error thirteen, Melendez claims the trial court erred in instructing the jury that in answering questions 4 and 6 they could not consider the conduct of Exxon before April 15, 1992. Melendez raised this complaint in his motion for new trial, but did not object to the charge on this ground before it was submitted to the jury.

■ To preserve error in the jury charge, a party must make the trial court aware of his complaint, timely and plainly, and obtain a ruling. *State Dept. of Highways & Public Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992). Because Melendez did not apprise the trial court of his complaint about the instruction during the charge conference and did not obtain a ruling, Melendez did not preserve this complaint for appeal. We overrule point of error thirteen.

### Sufficiency of the Evidence

■ In points of error fourteen and fifteen. Melendez challenges the factual and legal sufficiency of the evidence supporting the jury's finding that Exxon did not order Melendez to commit an illegal act. To determine whether the evidence is legally sufficient to support a jury's finding, an appellate court must consider all of the evidence in a light most favorable to the party in whose favor the verdict has been rendered and indulge every reasonable inference in that party's favor. *Formosa Plastics Corp. USA v. Presidio*

This case boils down to the fact that Mr. Melendez basically said, Everybody else is wrong. Exxon is wrong, OSHA is wrong, EPA is wrong -
MS. DAVENPORT: Objection, Your Honor, again.

THE COURT: The jury will follow the previous instructions and decide the case only from the evidence you heard from the witness stand under oath.

*Engrs. & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no evidence point will be sustained if(1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Havner*, 953 S.W.2d at 711 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 362–63 (1960)). If there is more than a scintilla of evidence to support the finding, a no evidence challenge must fail *See Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). A scintilla of evidence exists when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

Under point of error fourteen, Melendez complains that the two engineers, Kevin Smith and Mona Cognata, who testified for Exxon were not qualified experts and therefore their testimony is legally insufficient to support the jury's finding. Exxon contends Melendez has waived error regarding the qualifications of these witnesses because Melendez did not object to Cognata's testimony and only objected to Smith's testimony after a substantial portion of testimony had been given.

The record shows that Smith testified to the following before any objection about his qualifications was made: (1) he was Melendez's supervisor, (2) he had a conversation with Melendez about back-mixing and why it was important, (3) he did not ever ask Melendez to perform a back-mixing calculation, and (4) he explained to Melendez the purposes of the flare loss monitoring program and the concept of back-mixing. After Smith was questioned about the back-mixing calculations, Melendez's counsel objected that Smith had not been tendered as an expert and that he was not a professional engineer. The court overruled the objection.

█ Smith's testimony as a non-expert supports the jury's verdict. When he testified that he did not ask Melendez to perform back-mixing calculations, Smith was testifying as Melendez's supervisor and co-employee, not as an expert. This testimony alone supports the jury's finding that Exxon did not order Melendez to perform illegal activities.

Melendez did raise an objection before Smith began testifying about the propriety and legality of back-mixing calculations. Accordingly, Melendez did not waive his complaint about Smith's testimony as an expert. In any event, we need not address Smith's qualifications as an expert witness because Smith's testimony as Melendez's supervisor, that he never ordered Melendez to perform back-mixing calculations (the action Melendez claimed was illegal), is sufficient to support the jury's verdict.

█ Melendez raised no objections to Cognata's testimony. In *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex.1998), the court held that, to preserve a complaint that scientific evidence is unreliable, and thus no evidence, a party must object to the evidence before trial or when the evidence is offered.[5] The court ob-

5. Although in *Ellis* the supreme court required preservation of error by raising a complaint in the trial court about the reliability of expert testimony, 971 S.W.2d at 409–10, no such requirement was mentioned by the supreme court in *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex.1997). Instead, in *Havner* the court merely considered the reliability of the expert's testimony in a review of the legal suffi-ciency of the evidence. *Id.* at 711–13. Before performing this review, however, the court noted that Merrell Dow had raised the issue of scientific reliability at several junctures during the proceedings, including in the motion for summary judgment, during the summary judgment hearing, in motions in limine, in objections to the admission of several of the Havner's experts, and in their motion for directed verdict. *Id.* at 708–09.

served, that to do otherwise, would be unfair and allow trial or appeal by ambush, by allowing an appellant to gamble on a favorable judgment, knowing it could seek reversal on appeal despite a failure to object at trial. *Id.* Because Melendez did not object to Cognata's qualifications at trial, Melendez waived any complaint about her testimony.

 Under point of error fifteen, Melendez claims that when the testimony of Dr. Carman is considered, the great weight and preponderance of the evidence supports a finding that Exxon did attempt to have Melendez commit an illegal act and therefore, the evidence supporting the jury's negative finding is factually insufficient. In deciding factual sufficiency questions, the appellate court considers all of the evidence. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986). The court may set aside the finding only if the evidence is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Kevin Smith testified that "back-mixing" or free convection eddy currents involve the movement of light hydrocarbons, such as propane, propylene, ethane, and ethylene, back into the butadiene header. Although the light hydrocarbons are not supposed to be in the butadiene unit, Smith testified that these gases may rise on warm days back into the butadiene header or they may be forced into this header by excess pressure. Smith also testified that, because these hydrocarbons are light, they tend to rise, while butadiene is a heavy hydrocarbon and does not rise. Thus, the light hydrocarbons could rise back into the butadiene line. Smith testified that, to avoid counting the light hydrocarbons twice, their presence in the butadiene unit was subtracted when the flare loss report was prepared. Smith also testified that

the plant design allowing "on-purpose venting" was part of the permit approved by the Texas Air Control Board (TACB).[6] By design of the plant, vinyl acetylene, a highly explosive gas, is a by-product gas that must be removed and vented to the flare. Some butadiene is vented with the vinyl acetylene because without it the vinyl acetylene would be more likely to explode. Smith testified that no governmental agencies have advised Exxon that on-purpose venting is illegal.

Exxon engineer, Mona Cognata testified that Melendez supplied data to her and she, not Melendez, performed the back-mixing calculations. She added that it was never Melendez's responsibility to calculate back-mixing. Cognata testified that Melendez had mentioned to her his concerns about back-mixing and Cognata believed that Melendez's concerns stemmed from misunderstanding the concept of back-mixing. Cognata testified that she attempted to explain it to him. Cognata stated that she understood Melendez disagreed with back-mixing, but he never indicated to her he thought it was illegal. Cognata recalled no discussions with Melendez about on-purpose venting.

Melendez put on a witness, Dr. Neil Carman, who testified that on-purpose venting of butadiene beyond the parameters of Exxon's permit would be a violation and that, if Exxon supplied data to governmental agencies that did not accurately reflect the level of emissions going from that unit into the flares and the atmosphere, that too would be a violation. Dr. Carman also testified that Exxon's back-mixing calculations would have the effect of reflecting a lower amount of waste gas going to the flare than was actually present. Dr. Carman testified that, after reviewing documentation, it was possible Exxon was in violation of its permits as a result of its calculations for the on-purpose

Thus, there was no question about preservation of error in *Havner*.

**6.** The Texas Air Control Board is now called the Texas Natural Resource Conservation Commission. Although this name change has occurred, we will continue to use the acronym "TACB."

venting. On cross-examination, Dr. Carman admitted that Exxon's Baytown plant has never been issued a citation, a notice of violation, or an enforcement action for its back-mixing calculations or on-purpose venting. Dr. Carman also agreed that he had not read Exxon's permits for the years when Melendez worked at the plant and thus could not determine whether those permits had been violated. Dr. Carman testified he is not aware of any permits or regulations that prohibit Exxon from engaging in back-mixing calculations or on-purpose venting.

Although there is some hypothetical testimony that Exxon might have been in violation of its permit by performing back-mixing calculations and on-purpose venting, the great weight and preponderance of the evidence indicates that Melendez was never ordered to perform the allegedly illegal calculations and indicates the calculations and on-purpose venting are not illegal. Therefore, factually sufficient evidence supports the jury's finding that Exxon did not order Melendez to perform an illegal act. Accordingly, we overrule point of error fifteen.

### Cumulative Error

In point of error sixteen, Melendez claims that, even if we find no harmful error in the previous fifteen points of error, the errors together constitute cumulative and harmful error which probably caused rendition of an improper judgment. Because Melendez has not established that the trial judge, Judge Shearn Smith, committed error, there can be no cumulative error requiring reversal. *See Tacon Mech. Contractors, Inc. v. Grant Sheet Metal, Inc.*, 889 S.W. 2nd 666, 676 (Tex App Houston [14th Dist.] 1994, writ denied). We overrule point of error sixteen.

### Conclusion

We affirm the trial court's judgment.