**E. Dianne RICHARDS, Appellant,**

v.

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

**No. 14–98–01159–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 21, 2000.

---

Mack J. Travers, Katy, for appellants.

Gordon A. Holloway, Houston, Linda Acevedo, Austin, for appellees.

Panel consists of Justices SEARS, DRAUGHN, and LEE.*

## OPINION

JOE L. DRAUGHN, Senior Justice (Assigned).

The Commission for Lawyer Discipline (Commission) brought this disciplinary action against E. Dianne Richards (Richards), alleging multiple violations of the Texas Disciplinary Rules of Professional Conduct. Following a non-jury trial, the court suspended Richards from the practice of law for two years, one year active and one year probated. In six issues, Richards contends that: (1) the comments to the Texas Disciplinary Rules of Professional Conduct were not followed by the trial court; (2) Helen Vickery's "judicial admissions" in another lawsuit were binding on the Commission in this suit; (3) the Commission was collaterally estopped from bringing this suit because the same issues were litigated in another lawsuit; (4) the Commission's expert did not use the correct standard for ethical behavior to prove what an ordinary prudent family law specialist attorney would have done under the same or similar circumstances; (5) the trial court improperly excluded evidence of the Vickerys' asset report; and (6) the trial court improperly denied Richards' bills of exception. We affirm.

## BACKGROUND

Glenn Vickery (Glenn) and Richards had been friends for many years, and Glenn asked Richards to file divorce papers for his wife, Helen Vickery (Helen). Glenn told Richards that he was being sued for malpractice by June Wright for an amount that exceeded his insurance policy limits. Glenn told Richards that a divorce might be the way to protect their assets. Rich-

ards filed the divorce petition for Helen, but did not meet with Helen nor obtain Helen's permission before filing the divorce papers. At the time Richards filed the divorce petition, Helen had not retained Richards as her attorney.

Glenn told Helen to send Richards a retainer, and Helen sent Richards a check for $1,630.00. Helen believed the money was for the divorce in the event she and Glenn decided one was needed to protect their assets. Thereafter, Richards prepared an answer and cross-petition for divorce for Glenn, and someone from Richards' office signed Glenn's name to the papers. Richards filed Glenn's answer and cross-petition and did not tell Helen about it. Helen did not consent to Richards' representation of both herself and Glenn in the divorce. Richards made no independent investigation to determine if Helen agreed to the terms and conditions of the divorce decree, nor did she make an independent investigation of the assets of the community estate of the Vickerys. No sworn inventory of community property was ever filed.

Richards prepared and provided Glenn with a final decree. On November 13, 1991, Glenn met Helen in the West University area and asked her to sign it. Helen reluctantly signed the decree, and Glenn called Richards and advised her that Helen had signed. Richards called Helen, and Helen told her that she did not understand what was going on and that she did not want the divorce. Richards told Helen that she was doing the right thing, that Glenn loved her, and that she was protecting their assets.

Richards did not tell Helen about the divorce hearing set for November 22, 1991, and Richards took Glenn with her to prove up the divorce. After the trial court signed the divorce decree, Richards contacted Helen and told her it had to be changed because the decree did not in-

* Senior Justices Ross A. Sears, Joe L. Draughn, and Normal Lee, sitting by assignment.

clude a description of the Liberty County ranch property. After the *nunc pro tunc* entry of the amended divorce decree adding the missing property description, Richards prepared an order agreeing to seal the court records without telling Helen.

Shortly after the divorce was concluded, Glenn remarried and had Helen evicted from their home in Liberty County. Helen called Richards and asked for an explanation, and Richards told her she knew nothing about it. Thereafter, Helen sued Richards and Glenn and the trial court set aside the original property division and awarded Helen damages. *See Vickery & Richards v. Vickery,* 999 S.W.2d 342 (Tex. 1999) (denying petition for review).

The Commission brought disciplinary proceedings against Richards. The trial court entered judgment holding that Richards violated the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT 1.01(b)(1) [a lawyer shall not neglect a legal matter entrusted to the lawyer], 1.03(b) [a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation], 1.06(a) [a lawyer shall not represent opposing parties to the same litigation], and 2.01 [a lawyer shall exercise independent professional judgment and render candid advice]. TEX. DISCIPLINARY R. PROF'L CONDUCT, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998 & Supp.2000) (TEX. STATE BAR R. art. X, § 9).

## DISCUSSION

### Helen's "Judicial Admissions"

In her first issue, Richards contends the principles of law as contained in the comments to the Texas Disciplinary Rules of Professional Conduct were not applied to her professional conduct. Appellant argues that the comments were binding upon the trial court because of Helen's "judicial admissions" in the divorce bill of review/malpractice trial, the disciplinary proceeding against Glenn, and this disciplin-

ary proceeding against Richards. The Commission contends that Helen's testimony in these judicial proceedings cannot be considered "judicial admissions" because Helen was only a *witness* in this case, and judicial admissions concern only *parties.* Therefore, the Commission argues that Helen's testimony in the divorce bill of review/malpractice action, her testimony in Glenn's disciplinary action, and her testimony in this proceeding cannot be judicial admissions because judicial admissions can only bind a party to a proceeding.

A judicial admission results when a party makes a statement of fact which conclusively disproves a right of recovery or defense he currently asserts. *See H.E. Butt Grocery Co. v. Pais,* 955 S.W.2d 384, 389 (Tex.App.—San Antonio 1997, no writ) (citing *Gevinson v. Manhattan Constr. Co. of Okl.,* 449 S.W.2d 458, 466 (Tex.1969)). A judicial admission must be (1) made in the course of a judicial proceeding; (2) contrary to an essential fact for the party's recovery [or defense]; (3) deliberate, clear and unequivocal; (4) related to a fact upon which judgment for the opposing party could be based; and (5) enforcing the admission would be consistent with public policy. *See Sepulveda v. Krishnan,* 839 S.W.2d 132, 135 (Tex.App.—Corpus Christi 1992), *aff'd,* 916 S.W.2d 478 (Tex. 1995). *See also Seminole Pipeline Co. v. Broad Leaf Partners, Inc.,* 979 S.W.2d 730, 740 (Tex.App.—Houston [14th Dist.] 1998, no pet.). Because Helen was not a party to this disciplinary action, we hold her testimony in the divorce bill of review/malpractice action, Glenn's disciplinary action, and this case cannot be judicial admissions and used against her in this disciplinary proceeding. Appellant's contentions in issues one and two that Helen's judicial admissions were binding on the trial court in its interpretation of the rules are overruled.

### Helen's experience in legal matters

As a subpoint to her first and second issues, appellant contends that Helen was

experienced in legal matters and comment 3 to rule 2.01 authorizes a lawyer to furnish technical advice to a "client experienced in legal matters." Rule 2.01 provides:

> In advising or otherwise representing a client, a lawyer shall exercise independent professional judgment and render candid advice.

TEX. DISCIPLINARY R. PROF'L CONDUCT 2.01

> Comment 3 to rule 2.01 provides:
>
> 3. A client may expressly or impliedly ask the lawyer for purely technical advice. When such a request is made by a client experienced in legal matters, the lawyer may accept it at face value. When such a request is made by a client inexperienced in legal matters, however, the lawyer's responsibility as advisor may include indicating that more may be involved than strictly legal considerations.

TEX. DISCIPLINARY R. PROF'L CONDUCT 2.01 cmt. 3.

■ There is no evidence that Helen ever expressly or impliedly requested any "technical advice" from Richards. It is undisputed that Richards never contacted Helen until after the divorce. Richards does not state in her brief what "purely technical advice" she gave to Helen. Richards argues only that Helen agreed with Glenn to call Dianne to do the divorce, and therefore, Helen "granted authority to Glenn Vickery to request" Richards to do the legal paper work. There is nothing in the record to support this conclusory argument by Richards. Richards' characterization of Helen as "well experienced in legal matters" is her version of how she interprets Helen's testimony. Richards' contentions go to the credibility of the witnesses and the weight of the evidence. The resolution of disputed fact issues is a matter that is solely within the discretion of the trial court and cannot be successfully raised as a ground of error on appeal. *Vickery v. Commission for Lawyer Discipline,* 5 S.W.3d 241, 254–255 (Tex.App.— Houston [14th Dist.] 1999, pet. denied). Appellant's contentions in this subpoint to

issues one and two are without merit and are overruled.

## Rule 1.03(b)  Communication

As another subpoint to issues one and two, appellant contends Comment 2, rule 1.03(b), outlines permissive behavior of a lawyer in communicating with a client. Rule 1.03(b) provides:

> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03(b).

> Comment 2, rule 1.03, provides:
>
> 2. Adequacy of communication depends in part on the kind of advice or assistance involved. For example, in negotiations where there is time to explain a proposal the lawyer should review all important provisions with the client before proceeding to an agreement. In litigation a lawyer should explain the general strategy and prospects of success and ordinarily should consult the client on tactics that might injure or coerce others. On the other hand a lawyer ordinarily cannot be expected to describe trial or negotiation strategy in detail. Moreover, in certain situations practical exigency may require a lawyer to act for a client without prior consultation. The guiding principle is that the lawyer should reasonably fulfill client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03 cmt. 2.

■ In her brief, Richards again gives her version of Helen's testimony. Richards' position is that Helen did not contact Richards and ask for any advice, and therefore, Richards "fulfilled her client's expectations" at the time. The only con-

tact Richards made with Helen prior to the divorce hearing was on November 13, 1991, after Glenn called Richards and told her that Helen had signed the divorce decree. Richards called Helen and told her she "was doing the right thing" and Helen was "protecting her husband and their assets." Other than this brief conversation, the record shows that Richards never communicated with Helen about anything concerning the divorce until after the divorce. By failing to discuss any part of the divorce with Helen and by failing to obtain Helen's approval on any part of the divorce, we hold that Richards did not "reasonably fulfill client expectations for information consistent with the duty to act in the client's best interests." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.03 cmt. 2. *See also Gamez v. State Bar of Texas,* 765 S.W.2d 827, 831 (Tex.App.—San Antonio 1988, writ denied)(attorney's failure to discuss with divorce client matters of income tax exemptions and obtain client's approval of tax exemption order constituted intentional failure to seek lawful objectives of client). We overrule appellant's contentions that she did not violate rule 1.03 in her subpoint to issues one and two.

### COLLATERAL ESTOPPEL

In her third issue, Richards contends the Commission was collaterally estopped from bringing this suit because the same issues were litigated in another lawsuit. The trial court found Richards violated rules 1.01(b)(1) [a lawyer shall not neglect a legal matter entrusted to the lawyer] and rule 1.06(a) [a lawyer shall not represent opposing parties to the same litigation]. Richards contends that the Commission is estopped from such findings because these matters were determined in the bill of review/malpractice action brought by Helen against Richards and Glenn. *See Vickery & Richards v. Vickery,* 999 S.W.2d 342 (Tex.1999) (denying petition for review; unpublished opinion of First Court of Appeals affirming trial court's judgment attached to opinion as appendix). The Commission argues that it was not a party to these "underlying" proceedings and the doctrine of collateral estoppel does not apply to the Commission in this disciplinary proceeding.

The doctrine of collateral estoppel, or issue preclusion, is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues. *Sysco Food Services, Inc. v. Trapnell,* 890 S.W.2d 796, 801–802 (Tex.1994). A party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Id.* Strict mutuality of parties is no longer required. *Id.* To satisfy the requirements of due process, it is only necessary that the party against whom the doctrine is asserted was a party or in privity with a party in the first action. *Id.*

The Commission was not a party or in privity with a party in the bill of review/malpractice action. Therefore, the Commission was not collaterally estopped by the issues described in the bill of review/malpractice action. Appellant's contentions that the Commission was estopped to assert violations of rule 1.01(b)(1) and rule 1.06(a) in issue three are overruled.

As a subpoint to issue three, Richards further contends that she did not violate rule 1.06(a) [representing opposing parties to the same litigation] because she "merely formalized the agreement between Glenn and Helen Vickery dividing the community estate." Richards further argues that there was no conflict until after Helen was evicted. Richards' assertions go to the weight of the evidence. The resolution of disputed fact issues is a matter that is solely within the discretion of the trial court and cannot be successfully raised as

a ground of error on appeal. *Vickery v. Commission,* 5 S.W.3d at 254–255.

■■■ The trial court expressly found in its findings of fact that Richards never told Helen she had prepared and filed Glenn's counterpetition for divorce, and Helen did not give Richards her consent to represent both she and Glenn in the divorce. The trial court did not err in finding Richards violated rule 1.06(a). We overrule appellant's contentions in issue three.

## EXPERT TESTIMONY

In her fourth issue, Richards asserts that the Commission's expert witness did not prove that she violated the rules of professional conduct. She contends that Mr. Donn C. Fullenweider, the Commission's expert, utilized hypotheticals that were based on speculation. She contends the trial court must hear expert testimony as to what a reasonable and prudent family law specialist would have done under the same or similar circumstances. As subpoints to her fourth issue, Richards further contends Mr. Fullenweider used as the basis of his opinion testimony only the unpublished opinion by the First Court of Appeals in *Vickery & Richards v. Vickery* (attached as an appendix to *Vickery & Richards v. Vickery,* 999 S.W.2d 342 (Tex. 1999)) and the judgment of the trial court in that case. Therefore, Richards asserts that Mr. Fullenweider's testimony was without proper foundation and not relevant.

### The expert's testimony

Mr. Fullenweider has been a practicing lawyer in Harris County since 1958. He was board-certified in family law in 1975 and board-certified in civil trial law in 1976. He has maintained these certifications through the present time. Richards made no objection to Mr. Fullenweider's qualifications.

■■■ In response to hypothetical questions as to what an ethical family lawyer would do, Mr. Fullenweider testified, in pertinent part: (1) she needs to make sure she has authority to proceed on behalf of the client and that they have an attorney-client relationship; (2) she should have the express approval of the client if she files a counterclaim on behalf of the other spouse; (3) the client should be informed of all negotiations made with the adverse spouse towards an agreed divorce; (4) the lawyer should make sure a sworn inventory and appraisement of the parties' property is filed; and (5) the lawyer should establish the proper county of venue in a divorce action and file the divorce in that county.

Appellant made no objections during Mr. Fullenweider's testimony: (1) to his qualifications; (2) to the bases he used to support his hypotheticals; (3) to any part of his testimony as being speculative; (4) on the grounds that the form of his questions was improper and should be what a reasonable and prudent family law specialist would have done under the same or similar circumstances. At trial, appellant objected only that Mr. Fullenweider could not testify that she violated any of the disciplinary rules. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if the grounds are not apparent from the context of the request, objection, or motion. TEX.R.APP. P. 33.1(a)(1)(A). If a party fails to do this, error is not preserved. *See Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex.1991)(op. on reh'g). Appellant has failed to preserve her complaints about the expert testimony. We overrule appellant's contentions under her fourth issue concerning Mr. Fullenweider's testimony.

■■■ Appellant further asserts that the asset report that was introduced into evidence in the "underlying cases" should be judicially noticed. She asks this court to judicially notice Plaintiff's Exhibit 33, in the records of *Glenn Vickery v. Texas Commission of Lawyer Discipline,* 5 S.W.3d 241 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). In her brief,

appellant raises her complaint about the asset report as issue five, but argues it under issue four. The asset report is attached to appellant's brief in Appendix 5. Appellant did not offer the asset report into evidence at the trial, nor did she attempt to authenticate the documents and ask the trial court to judicially notice them. A court cannot take judicial notice of the records of another court in another case unless a party provides proof of those records. *Bhalli v. Methodist Hosp.*, 896 S.W.2d 207, 210 (Tex.App.—Houston [1st Dist.] 1995, writ denied). Accordingly, we cannot judicially notice the asset report. Appellant's contentions in issues four and five about the asset report are overruled.

As another subpoint to issue four, appellant contends that "all of the findings of the trial court are not relevant to the issues in the case because appellee has no expert testimony to say what fact findings violated which rule of professional conduct." Appellant does nothing more than summarily state her various subpoints, without citation to legal authority or substantive analysis. Therefore, we conclude she has failed to preserve these arguments for review. *See* TEX.R.APP. P. 38.1(h); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983); *Tacon Mechanical Contractors, Inc. v. Grant Sheet Metal, Inc.*, 889 S.W.2d 666, 671 (Tex.App.—Houston [14th Dist.] 1994, writ denied). *See also Favaloro v. Commission for Lawyer Discipline*, 13 S.W.3d 831, 840 (Tex.App.—Dallas 2000, no pet. h.). Accordingly, we overrule all of appellant's contentions under issue four.

## BILLS OF EXCEPTION

In issue six, appellant asserts the trial court improperly denied her formal bills of exception and refused to take judicial notice of pleadings and documents from other cases. At the hearing on appellant's motion for new trial, appellant presented four formal bills of exception complaining of exclusion of pleadings in the "underlying cases." It is unclear from appellant's brief exactly what the formal bills of exception

concern. The trial court denied bills 2, 3, and 4, because appellant never offered any of these pleadings as evidence in the trial. Appellant filed a motion to supplement the clerk's record to include these four bills of exception. After we initially denied appellant's motion to supplement, her subsequent motion to reconsider was taken with the case by our order of August 26, 1999, to be decided with all other issues in the case after submission. In her brief, appellant contends that she asked the trial court to take judicial notice of the pleadings in these cases, and the trial court did not answer. She does not cite to the record where her judicial notice of these pleadings was requested, and we find no such record.

Having taken appellant's motion to reconsider appellant's motion to supplement the record and motion for the appellate court to take judicial notice of these pleadings, we now deny appellant's requests. Appellant never offered these pleadings and documents into evidence at the trial on the merits. Appellant made no bills of exceptions, formal or informal. No offer of proof was made of the excluded evidence in any form. The excluded evidence is not in the record. Rule 34.5(c), Texas Rules of Appellate Procedure, authorizes appellate courts to supplement the record; however, it does not allow the creation of a new trial court record. *See Graham v. Pazos De La Torre*, 821 S.W.2d 162, 165 (Tex.App.—Corpus Christi 1991, writ denied); *Gerdes v. Marion State Bank*, 774 S.W.2d 63, 65 (Tex.App.—San Antonio 1989, writ denied). To allow supplementation at this late date would create a new trial court record. *See also Intermarque Automotive Products, Inc. v. Feldman*, 21 S.W.3d 544, 554 (Tex.App.—Texarkana 2000, no pet. h.).

As stated under issue five, we cannot take judicial notice of the records of another court in another case unless a party provides proof of those records. *Bhalli*, 896 S.W.2d at 210. Appellant did not offer the documents and did not request that the trial court judicially notice them. Ap-

pellant's contentions in issue six that the trial court erred in failing to take judicial notice of pleadings in another case is overruled.

Appellant contends she preserved error in her bills of exception. To preserve the error of a trial judge in excluding evidence, a party must do certain things. The party must: (1) attempt during the evidentiary portion of the trial to introduce the evidence, *Estate of Veale v. Teledyne Industries, Inc.,* 899 S.W.2d 239, 242 (Tex.App.—Houston [14th Dist.] 1995, writ denied); (2) if an objection is lodged, specify the purpose for which it is offered and give the trial judge reasons why the evidence is admissible, *Id.;* (3) obtain a ruling from the court, *Id.;* and (4) if the judge rules the evidence inadmissible, make a record, through a bill of exceptions [formal or informal], of the precise evidence the party desires admitted. *Id. See also Spivey v. James,* 1 S.W.3d 380, 385 (Tex.App.—Texarkana 1999, pet. denied). Because appellant failed to make an offer of proof at the trial stage of the excluded evidence, the trial court properly denied her bills of exception. We overrule appellant's contentions in issue six.

We affirm the judgment of the trial court.