Affirmed as Modified, and Opinion filed June 19, 2003










Affirmed as Modified, and Opinion filed June 19, 2003.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00473-CV

____________

 

PAULA
WELCH,
Appellant and Cross-Appellee

 

V.

 

STEPHANIE
HRABAR, Appellee and Cross-Appellant

 



 

On Appeal from the
County Court at Law No. 1

Galveston County, Texas

Trial Court Cause
No. 47,478

 



 

O P I N I O N








Following a trial to the court
in this breach-of-contract case, the trial court rendered judgment that
Appellee and Cross-Appellant Stephanie Hrabar recover “$42,924.00 as the
principal amount due,” post-judgment interest, and court costs from Appellant
and Cross-Appellee Paula Welch.  The
principal issue on appeal is whether res judicata or collateral estoppel
precludes Hrabar from recovering breach-of-contract damages from Welch when (1)
Hrabar filed a plea in intervention in Welch=s
separate tort case pending against third parties in another court, (2) Hrabar=s breach-of-contract
claim in the present case is identical to the breach-of-contract claim asserted
in Hrabar=s
intervention in Welch=s
tort case, (3) there is no indication Hrabar=s
intervention was dismissed or severed out of Welch=s tort case,  (4) the judgment in Welch=s tort case includes
language denying all requested relief not specifically granted but does not
include Hrabar in the style and does not refer to Hrabar=s intervention in the
body, and (5) neither Hrabar nor her counsel appeared or presented evidence in
Welch=s tort case.

We conclude the judgment
in Welch=s tort case does not
preclude Hrabar=s
recovery on her breach-of-contract claim in the present case and overrule Welch=s issue.  We also sustain Hrabar=s first issue on
cross-appeal in which she requests this court to render judgment that she
recover attorney=s
fees, but overrule her second issue in which she requests this court to render
judgment awarding her additional breach-of-contract damages.  Accordingly, we modify the judgment of the
trial court to include an award of attorney=s
fees and affirm the judgment as modified.

FACTUAL AND PROCEDURAL
BACKGROUND

In June 1999, several
plaintiffs, including Welch, filed a tort action in the Tenth Judicial District
Court of Galveston County against their insurer, Farmers Insurance
Exchange.  The plaintiffs in the tort
action alleged damage to their properties as a result of seismic blasting.  Three additional parties, Aspect Resources,
LLC, Veritas DGC Land, Inc., and Ameridian Technologies, Inc., were
subsequently added to the suit as defendants.[1]

In July 1999, Welch and
Hrabar executed a “[l]etter of understanding for
independent geoscience consulting,” by which Welch and Hrabar agreed Hrabar
would provide Welch with information on technical matters pertaining to Welch=s property damage claim
and would charge Welch at the rate of $125 per hour.  Two days later, they executed an addendum to
the letter of understanding, which provided Hrabar, in addition to her hourly
fee, would receive ten percent of any gross settlement.








By April 2000, Hrabar=s invoice to Welch
indicated Hrabar had performed over 415 hours of work for a total fee of
$51,880.10.  Of that amount, $48,705.10
remained due, according to the invoice. 
By letter dated April 11, 2000, Hrabar demanded payment of the amount
due.

On September 18, 2000,
Hrabar filed a breach of contract action against Welch in Galveston County
Court at Law No. 1.  In that action,
Welch sought $48,705.10 plus pre-judgment interest.

On February 9, 2001,
Hrabar filed a plea in intervention in Welch=s
tort suit in district court.  Hrabar
represented she was the retained expert for the plaintiffs and the plaintiffs= attorney, that she
performed necessary and reasonable expert witness services and incurred
expenses and prepared a report for use in the pending litigation.  Hrabar further represented the plaintiffs and
their attorney had agreed to pay reasonable and necessary expert witness fees
of $50,000, but had not done so.  Hrabar
requested judgment be entered in her favor “against Defendant.”

At some point, Welch
reached a settlement agreement with Farmers; and, on February 12, 2001,
jury trial commenced in district court on Welch=s
tort suit against the remaining defendants. 
The same day, Hrabar filed an amended plea in intervention in that
suit.  In the amended plea, Hrabar sought
judgment in her favor “against Plaintiffs.” 
Hrabar=s
attorney, Gerson Bloom, was present at pretrial motions the day of trial and returned
one other time, but was not present for the entire eight-day trial, and did not
put on any evidence in support of the plea in intervention.  According to Bloom, no one prevented him from
putting on evidence, but “there just wasn=t
an opportunity.”  According to Bloom, he
was on the docket sheet in the district court case, but was never recognized as
the intervening attorney.








On February 19, 2001, the
plaintiffs rested in the district court tort case, and the trial court granted
a directed verdict that plaintiffs take nothing on their claims against
Ameridian Technologies.  The trial court
also directed a verdict against plaintiffs and in favor of the remaining
defendants, Aspect Resources and Veritas, on all claims except simple negligence.

The same day, February
19, Bloom sent a formal demand letter by certified mail to Welch, in care of
her attorney, Robert D. Clements at the attorney=s
office address.  In the letter, Bloom
indicated if Welch did not pay Hrabar=s
claim for $48,705.10 within 30 days of receipt, Hrabar would amend her petition
in county court to add a claim for attorney=s
fees and interest.  A “D. McClure” signed
the certified mail receipt on February 21, 2001.  McClure was the receptionist at Clements=s office, where Welch
also worked

On February 21, 2001, the
jury returned its verdict in Welch=s
tort case, finding against the plaintiffs and for the remaining defendants on
the questions of negligence and proximate cause.  The same day Welch was served with Hrabar=s petition in county
court.

On March 22, 2001, Welch
filed her answer to Hrabar=s
petition in county court.  Welch pleaded
only a general denial.  The same day,
Hrabar filed her first amended petition, seeking $48,705.10, prejudgment
interest, and attorney=s
fees.

Meanwhile, in Welch=s tort case, the district
court rendered a take nothing judgment against the plaintiffs on March 29,
2001.  The judgment did not contain a
Mother Hubbard clause and did not mention Hrabar=s
plea in intervention.  The plaintiffs timely
filed a motion to set aside jury verdict or, in the alternative, motion for new
trial, and on June 6, 2001, the trial court denied the motion.[2]  On June 8, 2001, the trial court rendered a
modified judgment, again ordering plaintiffs take nothing, but adding an award
of costs against the plaintiffs and adding the provision, “All relief requested
in the above entitled and number cause and not specifically granted herein is
denied.”








Focus now shifted to the
county court.  On October 25, 2001, Welch
filed her first amended original answer in which, for the first time, she
asserted the defenses of res judicata and collateral estoppel.  Hrabar filed her second amended original
petition, in which she alleged, for the first time, the existence of the
addendum providing Welch was to pay Hrabar ten percent of any settlement Welch
received.

Welch next filed a
“motion to dismiss for lack of jurisdiction,” alleging res judicata and
collateral estoppel as the grounds warranting dismissal.  She asserted the district court judgment in
her tort action barred Hrabar=s
breach-of-contract claim in the present case.

The case was tried to the
court on January 17, 2001.  Hrabar called
three witnesses:  Welch (as an adverse
witness), herself, and Bloom (Hrabar=s
attorney).  Welch disputed many of the
invoiced charges as (1) not being part of the contract, (2) being other parties= responsibility to pay,
(3) being unreasonable, or (4) already having been paid.  She contended she had made payments which
were not reflected on the invoice, but could not provide documentation of the
payments.  

Welch also testified she
did not remember seeing the demand letter Bloom sent to her in care of her
attorney, although Welch admitted “obviously the office signed for it.”  When Hrabar moved for admission of the
letter, Welch objected on the ground it had not been authenticated.  The trial court responded, “Didn=t recognize it.  Not authenticated.”  The trial court then sustained the objection.

When Hrabar initially
attempted to inquire about the settlement proceeds Welch received in her tort
suit, Welch objected the settlement was confidential and did not answer.  The trial court sustained the objection, but
Welch later testified she believed she had received $10,396.63 from Farmers.

Finally, Welch testified
about the prior suit in district court. 
She stated Hrabar=s
intervention in that suit was based on the same contract as the present suit,
and Hrabar was never severed out and never put on evidence.








Hrabar testified about
the initial contract and the addendum. 
She explained various charges and opined the services reflected on the
invoice were reasonable and necessary to accomplish what Welch was asking for.  The invoice did not reflect a payment from
Clements for $1,600.

Bloom testified a
reasonable and necessary rate for his services was $150 per hour and he spent
forty hours on this case.  He was
therefore asking for $6,000 in attorney=s
fees.  Bloom also testified he had sent a
certified demand letter to Welch at her attorney=s
office, where Welch worked.  He admitted
Hrabar=s suit in district court
was based on the same contract as her suit in county court in the present case
and that he did not put on any evidence in the district court suit. 

At the close of evidence,
Welch moved for judgment on her affirmative defense of res judicata.  In the course of arguing the matter, Bloom
represented the initial judgment in the district court case had not been circulated
to him and he had never been given an opportunity to review it.  In response to the court=s question, Bloom stated
he was never recognized as an intervening attorney in the record in the prior
case.

The trial court rendered
judgment Hrabar recover “$42,924.00 as the principal amount due,” post-judgment
interest, and court costs from Welch. 
Welch appealed.  Hrabar also
appealed, “because the Trial court did not award Plaintiff attorney=s fees nor did the Trial
Court award the Plaintiff the full amount that she was entitled to.”

WELCH=S APPEAL








In a single point of
error, Welch contends the trial court erred in denying her motion for judgment
on her affirmative defenses of res judicata and collateral estoppel.  Within the general doctrine of res judicata,
there are two principal categories:  (1)
claim preclusion (also known as res judicata); and (2) issue preclusion (also
known as collateral estoppel).  Hernandez
v. Del Ray Chemical Int’l, Inc., 56 S.W.3d 112, 115 (Tex. App.CHouston [14th Dist.]
2001, no pet.) (citing Barr v. Resolution Trust Corp., 837 S.W.2d 627,
628 (Tex. 1992)).  Because res judicata
and collateral estoppel are affirmative defenses, the party asserting them has
the burden of pleading and proving the elements of the asserted defense.  See In re H.E. Butt Grocery Co.,
17 S.W.3d 360, 377 (Tex. App.CHouston
[14th Dist.] 2000, orig. proceeding) (collateral estoppel); Bell v. Moores,
832 S.W.2d 749, 754 (Tex. App.CHouston
[14th Dist.] 1992, writ denied) (res judicata).

For res judicata to
apply, a party must establish the following elements: (1) a prior final
judgment on the merits by a court of competent jurisdiction; (2) identity of
parties or those in privity with them; and (3) a second action based on the
same claims that were raised or could have been raised in the first
action.  Cont’l
Casing Corp. v. Siderca Corp., 38 S.W.3d 782, 792 (Tex. App.CHouston [14th Dist.]
2001, no pet.) (citing Amstadt v. United States Brass Corp., 919 S.W.2d
644, 652 (Tex. 1996)).  For collateral
estoppel to apply, a party must establish (1) the facts sought to be litigated
in the second action were fully and fairly litigated in the first action; (2)
those facts were essential to the judgment in the first action; and (3) the
parties were cast as adversaries in the first action.  Richards v. Comm=n for Lawyer Discipline,
35 S.W.3d 243, 249 (Tex. App.CHouston
[14th Dist.] 2000, no pet.)  (citing Sysco
Food Servs., Inc. v. Trapnell, 890 S.W.2d 796, 801 (Tex. 1994)).  Strict mutuality of parties is no longer
required.  Richards, 35 S.W.3d at
249 (citing Sysco Food Servs. 890 S.W.2d at 801).

In short, res judicata
prevents the relitigation of adjudicated claims or claims that could have been
raised (claim preclusion) and collateral estoppel bars the relitigation of
adjudicated essential facts (issue preclusion). 
Thus, when, as here, the issue or claim a defendant seeks to preclude
was indeed raised in a prior suit, the prior tribunal must have actually
determined the issue or claim on its merits for res judicata or collateral
estoppel to bar the subsequent suit.  For
three interrelated reasons, we conclude Welch did not meet her burden of
establishing the elements of either defense.








First, Welch did not meet
her burden of establishing that the district court=s judgment actually
disposed of (i.e., adjudicated) Hrabar=s
claim.  Hrabar is not included in the
style of the district court judgment, and the district court does not
explicitly dispose of her claim in the body of the judgment.  See Tex.
R. Civ. P. 306 (providing entry of judgment “shall contain the full
names of the parties, as stated in the pleadings, for and against whom the
judgment is rendered”); City of Austin v. Castillo, 25 S.W.3d 309, 314B15 (Tex. App.CAustin 2002, pet. denied)
(stating same and remanding for new trial when plaintiff was not named in
judgment, but by virtue of a Mother Hubbard clause, he took nothing).[3]

Hrabar=s attorney was never
recognized as an attorney of record in the district court.[4] On
appeal, Hrabar represents that no district court judgment was presented to her
trial counsel for review, approval, or signature.[5]  See Tex.
R. Civ. P. 305 (requiring each party who submits a proposed judgment to
serve proposed judgment on all other parties to the suit who have appeared and
remain in the case).  Accordingly, this
case is not an appropriate one in which to apply the presumption that, when a
trial court signs a judgment after a conventional trial on the merits, the
trial court “intended to, and did, dispose of . . . all issues made by the
pleadings between the parties.”  North
East Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 897B98 (Tex. 1966).








Second, even were we to
conclude the district court disposed of Hrabar=s
claim in the judgment, Welch has not established the district court disposed of
the claim on its merits. 
Hrabar did not appear in Welch=s
tort action.  The district court did not
recognize her attorney on the record in that action, and the attorney put on no
evidence.  Welch argues Hrabar was required
to put on evidence in the district court case, and implies her failure to do so
prevents her from contending her claim was not decided on the merits.  In support Welch cites only Texas Rule of
Civil Procedure 265(e), which provides, “The intervenor and other parties shall
make their statement, unless they have already done so, and shall introduce
their evidence.”  Rule 265, however,
deals with the order of proceedings in a jury trial; it does not address the ramifications
of an intervenor=s
not putting on evidence.

The latter issue was
addressed in Nobel v. Meyers, 76 Tex. 280, 13 S.W. 229 (1890), cited
in 1 Roy W. McDonald, Texas Civil
Practice '
5.81, at 610 n.657 (Diane M. Allen et al. eds., 1992 ed.).  Nobel involved a suit for partition of
land brought by the heirs, except one, of Grace B. Nobel.  Nobel, 13 S.W. at 229.  Appellant intervened, claiming he and other
heirs of his father owned an undivided interest in one-half of the lands to be
partitioned.  Id.  The plaintiffs responded to the intervention,
raising various defenses, but did not pray for any affirmative relief against
the intervenor.  Id.  The intervenor did not appear at trial, and
the trial court decreed the intervenor “take nothing by his intervention.”  Id. 
The supreme court disagreed with this disposition, stating,

We think that the
proper judgment for the court to have rendered, under these circumstances,
would have been to dismiss the intervention without prejudice.  An intervenor against whom no affirmative
relief is asked by the pleadings of the other parties to the cause occupies so
much the position of a plaintiff that the only proper action to take with
regard to him, when he fails to appear, is to dismiss his suit for want of
prosecution.  The fact that the
intervention is in a suit for partition does not change or affect the rule.

Id. at 230.

We conclude Hrabar held
the status of a plaintiff in the district court.  If a suit is dismissed without prejudice, or
if the plaintiff takes a voluntary nonsuit, res judicata does not impede
subsequent actions.  Bell, 832
S.W.2d at 755.  Under Nobel, the
appropriate disposition of Hrabar=s
intervention in Welch=s
case was dismissal without prejudice. 
Accordingly, we decline to construe the district court=s judgment as a judgment on
the merits such as would bar the present suit.[6]








Nevertheless, Welch
directs this court to Schwartz v. Taheny, 846 S.W.2d 621 (Tex. App.CHouston [14th Dist.]
1993, writ denied).  In that case,
Schwartz had intervened to recover attorney=s
fees from his former client, who had fired Schwartz before trial.  Id. at 622.  The intervention was supposed to have been
severed and heard only if the client recovered on his claim.  Id. 
The case went to trial, the jury found in favor of the client, and the
trial court rendered judgment awarding actual damages to the client.  Id. 
In the judgment, however, the court made no mention of the intervention
and included a Mother Hubbard clause.  On
appeal, Schwartz argued inclusion of this clause disposed of his intervention
claim in violation of his due process rights. 
Id.

In the course of deciding
the case, we stated, “A judgment which provides that >all relief not expressly
granted is hereby denied,=
disposes of all parties and issues in a case; it is a final judgment.  An intervenor is bound by a final judgment
unless he has been dismissed, severed, or he has withdrawn.”  Id. (citations omitted).  Welch relies on the second sentence to argue
Hrabar is bound by the district court judgment.

In Schwartz, however,
the parties advised the court of appeals the trial court had severed the
intervention, and this court went on to hold the trial court erred in entering
a final judgment that disposed of the intervention claim without first hearing
that claim.  Id. at 623.  This court then reversed the judgment and
remanded for a trial on the merits of the intervention claim.  Id. 
Importantly, this court concluded the intervenor=s claim was not
legitimately encompassed within the final judgment pursuant to the Mother
Hubbard clause.  Schwartz is
procedurally distinguishable from the present case, but to the extent it has
any relevance, it reinforces our conclusion it would be inappropriate to hold
the Mother Hubbard clause in the district court judgment was a judgment on the
merits sufficient to support the affirmative defenses of res judicata and
collateral estoppel as bars to Hrabar=s
claim in county court.








Third, the policies underpinning
res judicata and collateral estoppel do not support application of these
doctrines in the present case.  “The
policies behind the doctrine [of claim preclusion or res judicata] reflect the
need to bring all litigation to an end, prevent vexatious litigation, maintain
stability of court decisions, promote judicial economy, and prevent double
recovery.”  Barr, 837 S.W.2d at
629.  Similarly, the doctrine of
collateral estoppel reflects the need to bring all litigation to an end and is
designed to protect parties from multiple lawsuits, promote judicial
efficiency, and prevent inconsistent judgments by precluding the relitigation
of issues.  Sysco Food Servs., 890
S.W.2d at 801.  In the present case,
because Hrabar did not appear and did not put on evidence in district court,
Welch was not forced to litigate the breach of contract claim in that court,
and, as discussed above, there is no indication the district court expended any
resources in determining Hrabar=s
claim.

In summary, Welch did not
establish the district court actually disposed of her breach of contract claim
on the merits, and we conclude the policies underlying res judicata and
collateral estoppel would not be served if the district court=s judgment barred her
present claim.  Accordingly, we overrule
Welch=s sole point of error.

HRABAR’S APPEAL

Hrabar challenges two
aspects of the judgment.  In issue one,
she contends the trial court should have awarded her attorney=s fees.  In issue two, she contends the trial court
erred in not granting her additional damages equal to ten percent of Welch=s settlement
proceeds.  In her prayer for relief, she
requests this court to render judgment for attorney=s fees in the amount of
$6,000, the additional recovery of ten percent of the settlement proceeds of
$10,396.63 (i.e., $1039.66), plus “additional costs and attorney=s fees for this appeal.”

Attorney=s Fees








In issue one, Hrabar
contends she is entitled to attorney=s
fees under Texas Civil Practice and Remedies Code section 38.001.  She argues that, even without the demand
letter being admitted into evidence, she established she complied with the
requirements of section 38.002, the procedure a claimant is to follow if she is
to recover attorney=s
fees under section 38.001.  Finally, she
contends the unrefuted testimony established her counsel charged a reasonable
and necessary fee of $6,000 for the services he performed and requests this
court to render judgment for attorney=s
fees in that amount.[7]

Welch counters by citing Cale=s Clean Scene Carwash,
Inc., v. Hubbard, for the proposition that a zero award
for attorney=s
fees is proper if the evidence (1) fails to prove (a) any attorney=s services were provided;
or (b) the value of the services provided; 
or (2) affirmatively shows no attorney=s
services were needed or that any services provided were of no value.  76 S.W.3d 784, 787 (Tex. App.CHouston [14th Dist.]
2002, no pet.). Welch then argues Hrabar=s
fees in the county court suit could not have been reasonable and necessary
because, under the doctrines of res judicata and collateral estoppel, this suit
should have been barred altogether.

Texas Civil Practice and
Remedies Code section 38.001 provides in relevant part:  “A person may recover reasonable attorney=s fees from an individual
or corporation, in addition to the amount of a valid claim and costs, if the
claim is for . . . rendered services.”  Tex. Civ. Prac. & Rem. Code Ann. ' 38.001(1) (Vernon
1997).  To recover attorney=s fees under Chapter 38,
a claimant (1) must be represented by an attorney; (2) she must present the
claim to the opposing party or to a duly authorized agent of the opposing
party; and (3) before the expiration of the 30th day after the claim is
presented, the opposing party must not tender payment for the just amount
owed.  Tex.
Civ. Prac. & Rem. Code Ann. '
38.002 (Vernon 1997).  When a party
proves these three requisite elements, an award of attorney=s fees for breach of
contract is mandatory, not discretionary. 
Cale=s
Clean Scene Carwash, 76 S.W.3d at 787 & n.4.








Bloom, Hrabar=s attorney, testified
that, at least 30 days before coming to court, he sent a certified letter to
Welch at her attorney=s
office where Welch worked, and Clements 
(Welch=s
trial counsel) was her agent.  Bloom
continued, “It was signed by the green card [sic] demanding that she pay Ms.
Hrabar=s bill within 30 days of
receipt of the letter, and that payment was not received.”  Although Welch testified she did not remember
seeing the letter, she acknowledged the green card had been signed by a
receptionist at Clements=s
office.  Bloom=s and Welch=s testimony was
uncontroverted.  Hrabar proved the
requisite elements entitling her to attorney=s
fees.

Bloom testified he spent
40 hours on “this case alone,” that the 40 hours was reasonable and necessary,
and that a reasonable and necessary hourly rate was $150.  Welch did not present controverting
testimony.  In cross-examination of
Bloom, Welch did  point to the fact that
Hrabar had requested only $2,500 in her interpleader action and also had not
appeared or put on any evidence in that case.

When an attorney=s testimony regarding his
fees is uncontroverted, clear, direct and positive, and not contradicted by any
other witness or attendant circumstances, and there is nothing to indicate
otherwise, and appellate court may, in the interest of judicial economy, render
judgment for attorney=s
fees.  See Ragsdale v. Progressive
Voters League, 801 S.W.2d 880, 882 (Tex. 1990); see also World Help v.
Leisure Lifestyles, Inc., 977 S.W.2d 662, 684, 686 (Tex. App.CFort Worth 1998, pet.
denied) (citing Ragsdale and rendering judgment for $60,000 in attorney=s fees for trial in
breach-of-contract case).  This exception
to the general rule regarding interested witness testimony, however, does not
mean in every case in which a party offers uncontradicted testimony, such
testimony mandates an award of the claimed amount.  Ragsdale, 801 S.W.2d at 882.  “For example, even though the evidence might be
uncontradicted, if it is unreasonable, incredible, or its belief is
questionable, then such evidence would only raise a fact issue to be determined
by the trier of fact.”  Id.








We have rejected Welch=s argument the present
suit was barred.  Welch=s cross-examination of
Bloom regarding his conduct of the district court case and the difference
between the fee requested in that case and the fee requested in county court
does not render the evidence regarding Bloom=s
fee in this case unreasonable, incredible or of questionable belief such as to
raise a question to be determined by the trier of fact. 

We sustain Hrabar=s issue one and render
judgment Hrabar recover $6,000 in attorney=s
fees.

Recovery under the Addendum

In issue two, Hrabar contends
she was entitled to ten percent of Welch=s
settlement proceeds from the district court tort case.  She requests this court to render judgment
for the additional ten percent recovery. 
She also “requests that Welch be required to submit to the Court for an in
camera inspection the settlement documents from the Underlying Lawsuit to
allow confirmation of the settlement proceeds received by Welch.”

On the record before this
court, we cannot determine what the judgment award of “$42,924.00 . . .
principal amount due” comprises. 
Although $42,924 is less than the $48,705.10 Hrabar originally asserted
Welch owed on the invoice under the hourly contract, the trial court appears to
have deleted charges from Hrabar=s
invoice to Welch.  In addition, Hrabar
conceded she had received $1,600 from Clements, and in her trial brief reduced
her original demand by $1,600 to a demand of $47,105.10, but we are unable to
determine whether the trial court further reduced Hrabar=s recovery by this amount
or offset it by an amount attributable to the addendum.  In short, the record before this court is
insufficient to establish the alleged error of which Hrabar complains.[8]








Moreover, Hrabar cites no
authority in support of her arguments under issue two.  An issue must be supported by argument and
authorities to be properly before the court on appeal.  Knoll v. Neblett, 966 S.W.2d 622, 639
(Tex. App.CHouston
[14th Dist.] 1998, pet. denied).

We overrule Hrabar=s issue two.

CONCLUSION

We have overruled Welch=s sole issue.  We have sustained Hrabar=s issue one and overruled
Hrabar=s issue two.  Accordingly, we modify the judgment of the
trial court to include an award of attorney=s
fees of $6,000, and affirm the judgment as modified.

 

 

/s/        John S. Anderson

Justice

 

Judgment rendered and Opinion filed June 19, 2003.

Panel consists of Justices Anderson, Seymore, and Guzman.











[1]  These parties
were oil or drilling companies.





[2]  The only
document in the present case indicating denial of the motion is the district
court=s docket sheet, which contains the following notation
for June 6, 2001:  “Hearing held on
Plaintiffs’ Motion to Set Aside Jury Verdict and/or Motion for New Trial and
after hearing testimony and arguments of counsel,  Motion Denied per Order to be Filed.”  The order is not part of the appellate record
in the present case.





[3]  The district
court’s judgment here, with its Mother Hubbard clause, is therefore
distinguishable  from a judgment that is
silent on one of two claims pleaded by a single party.  Cf. 
Rackely v. Fowlkes, 89 Tex. 613, 36 S.W. 77 (1896), cited in Lehmann
v. Har-Con Corp., 39 S.W.3d 191, 196B97 (Tex.
2001).





[4]  Thus, Hrabar=s attorney never entered an appearance.  See Tex.
R. Civ. P. 120.





[5]  Hrabar bases
this claim on the lack of her attorney=s signature
on any of the judgments.  In the trial
court, Hrabar=s attorney stated only that the initial judgment had
not been circulated to him.





[6]  We note, too,
the general rule that res judicata does not prelude a claim that is subject to
a future condition.  See Valley Forge
Ins. Co. v. Ryan, 824 S.W.2d 236, 238B39 (Tex.
App.CFort Worth 1992, no writ).  Although Hrabar=s plea
in intervention was not stated as a conditional claim, Hrabar=s attorney subsequently explained Hrabar filed as an
intervenor in Welch=s lawsuit “to try and trap some of the funds that
would have been paid from the defendant in the underlying suit to Ms.
Welch.”  In essence, then, Hrabar=s intervention presented a claim triggered only on a
recovery by Welch.





[7]  As set forth
above, Hrabar also prays for additional costs and attorney=s fees for this appeal.  Hrabar did not present the trial court with
any evidence regarding appellate attorney’s fees.





[8]  Defendant’s
Exhibit 9 is a color coded copy of Hrabar’s invoice
to Welch under the hourly contract.  It
contains handwritten notations, “delete,” and a handwritten calculation:  “$48,705.00” minus “$5,781.00” for a total of
“$42,924.00.”  This calculation reflects
subtraction of the indicated deletions, but no acknowledgment of the $1,600 payment.