Opinion issued December 31, 2020



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00557-CV

———————————

### JETHER CHRISTIAN AND DEREK GEORGE, Appellants

### V.

### OCEANWIDE AMERICA, INC. AND GABRIELLA USA, LLC, Appellees

---

On Appeal from the County Court at Law No. 1
Galveston County, Texas
Trial Court Case No. CV-0074184

---

## MEMORANDUM OPINION

Jether Christian and Derek George were working on a barge when it began rocking in the waves, causing a 75-pound shackle to swing loose and strike both men. The men sued to recover personal injury damages. Their cases were consolidated into a single jury trial. Christian recovered damages, and George did

not. Both appealed the judgment, raising evidentiary issues. Specifically, Christian contends the trial court abused its discretion in permitting an undesignated medical expert to testify about Christian's medical condition. Both contend the trial court abused its discretion in denying their request to call Oceanwide America, Inc.'s corporate representative late in the trial.

We reverse in part and affirm in part.

### Procedural Background and Witness Matters

The barge incident occurred in 2015. Christian and George filed suit in 2015. Experts were designated in 2016. The two suits were consolidated in 2017. Expert designations were supplemented multiple times in 2018.

George and Christian each designated experts. Christian designated his treating orthopedic surgeon, Dr. Zoran Cupic, and a life care planner, Dr. Sasha Iversen, among others.

When the defendant entities designated experts, they did not elect to designate the same experts for both cases. On the issue of Christian's medical condition, prognosis, and treatment, the defendants designated Dr. Vanderweide to "offer opinions and/or rebuttal opinions" related to Christian's "claim of injuries to his neck, back, chest, hands and other parts of his body." In addition, Vanderweide was designated to opine about Christian's "claim for physical impairment and physical pain."

2

On the issue of George's medical condition, prognosis, and treatment, the defendants designated Dr. Edward C. Murphy. They disclosed that Murphy may testify regarding George's "alleged back, neck and hip pain" that "allegedly resulted from the incident and may opine as to the cause of the spinal condition and the diagnosis, necessity, and reasonableness of surgical treatment to address those conditions." Dr. Murphy was designated for George only: he was not designated as an expert in the Christian litigation.

At the consolidated jury trial, the defendants brought Murphy to testify live about George. They did not bring Vanderweide to testify live, instead choosing to read portions of Vanderweide's deposition transcript discussing Christian.

The consolidated trial began in September 2018. Cupic testified during Christian's case-in-chief on Thursday, September 13. He testified that he treated Christian a couple years earlier, Christian was not a candidate for surgery at that time, so his medical records did not reflect a need for surgery. Christian was not a candidate for surgery at the time of trial because conservative therapies were continuing to provide relief, but Cupic agreed with Iversen that Christian may need surgery in the distant future.

On Monday, September 17—four days later—the defendants raised for the first time calling Murphy—who was designated in the George litigation—to testify

3

as a rebuttal witness in the Christian litigation about Christian's medical records and to opine whether Christian required back and neck surgery.

Defense counsel offered that the rebuttal testimony from the undisclosed witness was appropriate because Christian's treating physician, Cupic, had just offered "surprise" testimony from the stand that "surgery is going to be required for Mr. Christian."

Christian's counsel pointed out that they had produced the expert report of the life care planner, Iversen, years earlier, the defendants were aware that there would be testimony that future surgeries were required to a reasonable degree of medical probability, and the defendants had designated an expert, Vanderweide, to testify, including in rebuttal, that such surgery would not be necessary.

Christian argued there was no basis for permitting testimony from an undisclosed witness because the topic of rebuttal testimony was reasonably anticipated and actually anticipated, Vanderweide was timely designated as an expert on that very topic, Vanderweide was a local physician who could be called live if the defendants chose, and there was no basis for permitting Murphy to testify in Vanderweide's stead.

Defense counsel countered that they had not planned to call Vanderweide live and "he is not available to come here." Defense counsel did not account for the four-day period between when Cupic had testified and when they first raised an

4

emergent need for rebuttal testimony from an undisclosed expert. They did not provide any insight into Vanderweide's future availability, including whether Vanderweide might be available to testify live any of the remaining four days of trial, if not that particular day. Nor did they seek a continuance to permit Vanderweide to appear and testify in response to Cupic's testimony the week before.

The trial court asked Christian's counsel to articulate an objection to the testimony, counsel explained Christian's position, and the trial court overruled the objection and permitted the testimony. This procedure suggests that the trial court burdened Christian with disproving good cause instead of requiring the defendants to meet their burden to establish good cause (or lack of unfair surprise or prejudice), as the law requires.[1]

After the trial court overruled Christian's objection, defense counsel called Murphy to testify as an undisclosed rebuttal expert against Christian on Monday, September 17. Trial continued until that Friday, September 21, a full week after Cupic testified.

---

[1] When a party seeks to call an expert to testify who was not designated as an expert witness in the litigation, the burden is on the party seeking to offer that testimony to establish good cause for the failure to timely make, amend, or supplement the discovery response to include the undisclosed witness or that the failure to do so will not unfairly surprise or prejudice the other parties. *Homeyer v. Farmer*, No. 10-11-00009-CV, 2011 WL 6004338, at *9 (Tex. App.—Waco Nov. 23, 2011, no pet.) (mem. op.); *Jurek v. Herauf*, No. 14-07-00727-CV, 2009 WL 179204, at *3 (Tex. App.—Houston [14th Dist.] Jan. 27, 2009, no pet.) (mem. op.); *see* Tex. R. Civ. P. 192.3(d), 193.6.

Murphy testified at length that the accident did not cause Christian's herniations, that his nine documented herniations would simply "heal themselves," and that Christian's treating doctor, Cupic, was medically irresponsible.

The defense later called the designated expert, Vanderweide, by deposition as planned. In one excerpt, plaintiff's counsel asked Vanderweide about the disparity between the large number of times he has testified by deposition and the minimal number of times he has testified live at trial. Vanderweide testified that the source of the disparity is that he "charge[s] an exorbitant amount of money to leave [his] office for the day," specifically, "$10,000." Plaintiff's counsel then asked,

> And instead of coming to the trial of this matter and sitting in front of the jury with all of us there in the courtroom, it is your choice here today to give a deposition at a lower rate than what it would be to go to the actual courtroom. Is that correct?

And he answered,

> I think that's true, but I'm available.

Through his deposition testimony, which was read to the jury, Vanderweide opined that the barge incident caused Christian's chest wall contusion but did not cause his herniations. Vanderweide acknowledged that Christian had multiple herniations but stated that surgery was not appropriate. He testified that he had read Iversen's

6

report and, in his professional medical opinion, her medical conclusions had "no substantiation whatsoever."

After all evidence was received and the parties closed, the jury found Oceanwide America and Gabriella USA liable for Christian's injuries and awarded Christian just over $50,000 in past damages. The jury did not award him any future damages. The jury did not find any defendant liable for George's injuries; instead, it found that George was 100 percent responsible for his injuries. The jury awarded no damages to George.

In addition to negligence and damages questions directed to each plaintiff, the jury was asked a gross negligence question:

> Do you find by clear and convincing evidence that the harm to Jether Christian and Derek George resulted from gross negligence?

There was a single blank to write either *yes* or *no*. The jury answered "Yes." The jury then found Oceanwide America and Gabriella USA liable for $125,000 each in punitive damages. As Christian and George note in their appellate brief, the punitive damages award was for Christian only, given that George did not obtain a liability finding against any defendant.

Oceanwide America and Gabriella USA moved for judgment notwithstanding the verdict to challenge the award of punitive damages. The trial court entered a final judgment awarding Christian the general damages found by the jury but denying him the punitive damages award. The final judgment

7

confirmed the zero-damages award for George, for whom the jury had assigned 100 percent fault and awarded no damages.

Christian and George moved for a new trial, and the trial court denied their motion. Both Christian and George appealed.

## Rebuttal Expert Witness

In the first issue, Christian contends the trial court abused its discretion by permitting Murphy to testify as an undisclosed rebuttal expert witness.

### A.    Standard of review

The admission and exclusion of evidence, including expert testimony, is committed to the trial court's discretion. *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). To obtain reversal on the basis of an evidentiary ruling, the appealing party must establish that the trial court erred in admitting the evidence, the evidence was controlling on a material issue and not cumulative of other evidence, and the error probably caused the rendition of an improper judgment. *Id.*; *Schlein v. Griffin*, No. 01-14-00799-CV, 2016 WL 1456193, at *7 (Tex. App.— Houston [1st Dist.] Apr. 12, 2016, pet. denied) (mem. op.).

### B.    Applicable law

When a party fails to timely identify a witness, that party may not offer the undisclosed witness's testimony unless the court finds that (1) there was "good cause" for the failure to timely identify the witness or (2) allowing the witness to

testify despite the failure "will not unfairly surprise or unfairly prejudice the other [party]." Tᴇx. R. Cɪv. P. 193.6(a). The burden of demonstrating good cause or lack of unfair surprise and prejudice is on the party seeking to call the unidentified witness. *Id.* 193.6(b); *see Homeyer v. Farmer*, No. 10-11-00009-CV, 2011 WL 6004338, at *9 (Tex. App.—Waco Nov. 23, 2011, no pet.) (mem. op.); *Jurek v. Herauf*, No. 14-07-00727-CV, 2009 WL 179204, at *3 (Tex. App.—Houston [14th Dist.] Jan. 27, 2009, no pet.). A trial court's finding of good cause or lack of unfair surprise and prejudice must be supported by the record. Tᴇx. R. Cɪv. P. 193.6(b).

Not every person who ultimately testifies at trial must be predisclosed. Under Rule 192.3(d), a party is not required to disclose in discovery the identity of "rebuttal or impeaching witnesses the necessity of whose testimony cannot reasonably be anticipated before trial." *Id.* 192.3(d). The Texas Supreme Court has held that an unexpected need for a rebuttal witness may, under certain circumstances, constitute good cause. *See Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 4 (Tex.1994); *see also Melendez v. Exxon Corp.*, 998 S.W.2d 266, 276 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (tactical decisions to wait and call a witness as a rebuttal witness when the party could anticipate the need for the testimony does not establish good cause). But the burden remains on the party seeking to call the undisclosed witness, and the record must demonstrate good

cause. *See Bullock*, 870 S.W.2d at 4; *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 916–17 (Tex. 1992); *Melendez*, 998 S.W.2d at 276.

Labeling a witness's testimony as rebuttal does not automatically insulate the witness from disclosure. *See Alvarado*, 830 S.W.2d at 916 ("Alvarado's tactical decision prior to trial to call [witness] on rebuttal was not good cause for failing to comply with discovery."); *Melendez*, 998 S.W.2d at 276. A rebuttal witness must be disclosed if the need for testimony on that issue reasonably should have been anticipated. *Rankin v. FPL Energy, LLC*, 266 S.W.3d 506, 514–15 (Tex. App.—Eastland 2008, pet. denied) (because party knew what other expert would testify to, they also knew that, if they intended to challenge that expert's opinions, they were obligated to disclose a witness to rebut the testimony); *Moore v. Mem'l Hermann Hosp. Sys., Inc.*, 140 S.W.3d 870, 875 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (because the hospital disclosed its expert's opinions, the plaintiff could have reasonably anticipated the need to rebut the testimony at trial; therefore, the plaintiff's expert was "simply an ordinary rebuttal witness whose use reasonably could have been anticipated" and had to be disclosed); *see In re A.M.A.R.*, No. 05-10-01303-CV, 2011 WL 5085585, at *2 (Tex. App.—Dallas Oct. 27, 2011, no pet.) ("There is no exception for an ordinary rebuttal witness whose use could reasonably have been anticipated by the party.").

The good-cause showing proves more difficult when a party has designated one or more witnesses on a topic but seeks to call an undisclosed witness to testify instead. *See, e.g.*, *In re Commitment of Stevenson*, No. 09-11-00601-CV, 2013 WL 5302591, at *7 (Tex. App.—Beaumont Sept. 19, 2013, no pet.) (concluding expert was not timely disclosed and could not testify, and stating that "there is nothing in the record to explain why other expert witnesses that Stevenson timely designated could not have" provided the testimony Stevenson sought to elicit from his undisclosed witness)

## C.      Defendant did not establish good cause

The Defendants argue they met their burden to show good cause. We consider first whether the content of Cupic's testimony supports a good-cause finding.

On direct examination, Cupic detailed his past medical treatment of Christian. In the beginning, he prescribed medication for muscle spasms. He referred Christian to physical therapy, followed by in-home exercises. Christian showed improvement, but his pain would intensify with activity to an eight-out-of-ten. Cupic did not discuss surgery with Christian at the time, as it was not medically necessary then.

Cupic told Christian he "has to be careful" and "do the exercises so that we don't end up [needing] to have surgery." He advised Christian "to do conservative

11

measures which means exercises." But, if he "gets worse, then, of course, we'll talk about the surgery."

At trial, Cupic was asked if he believes Christian will need surgery at some point in the future. He testified that he believes Christian will eventually need surgery. During cross-examination, defense counsel confirmed Cupic's opinion on the need for future surgeries:

> Q. Okay. No. You're saying if it gets worse, then he can have surgery?
>
> A. Correct.
>
> Q. Okay. But based on the medical record that you personally documented, he was getting better and he hasn't been back asking for help . . . . Correct?
>
> A. That is correct; but even though he was better on the last visit, his low back was between pain two to eight. Eight is very significant. And if he does too much as far as lifting and bending and all this stuff that I outlined, he will have a lot of pain. He will end up having surgery.
>
> Q. Do you have any indication based upon the reasonable medical probability that Mr. Christian's condition . . . that would require the surgeries you've told this jury are necessary?
>
> A. Not today, no.
>
> . . . .
>
> Q. [Y]ou don't have any information that would suggest that his condition is or will get worse at some point in the near future. True?
>
> A. Oh, I can't answer that question. It may be . . . .
>
> [H]e may need surgery in the future . . . .

12

Defendants assert "surprise" by this "shocking," "bombshell testimony" from Cupic that was an "about-face" and "changed his prognosis" to requiring surgery. We cannot agree with the defendants' characterization, and we fail to see the surprise.

Defendants point to Cupic's medical records to demonstrate a surprise in Cupic's trial testimony, but those records confirm Cupic's trial testimony, which was that, at the time he was caring for Christian, conservative therapies were appropriate and surgery was not. The medical records reveal the then-current status of Christian's treatment: conservative therapies. Nowhere in those medical records was Cupic asked to opine whether he thinks, at some point in the distant future, that this patient may require surgical intervention. And, from what we can tell from the appellate record, defendants never deposed Cupic to determine his views on the matter.

Cupic was a treating physician. He was designated as a witness in that capacity. From this record, it appears he did not submit a report, and the defendants did not depose him. While the defendants may have anticipated different testimony from Cupic based on what they read in Christian's medical records, Cupic's actual testimony was not inconsistent with the records. The medical records indicated no surgery was warranted at the time of the visits. Cupic testified it still was not warranted at the time of trial. But, depending on Christian's level of activity over

the next many years, Christian "may need surgery in the future." That testimony simply is not inconsistent with medical records documenting conservative therapies to address then-present symptoms. As such, the content of Cupic's testimony fails to establish good cause for permitting an undisclosed witness to testify as an expert medical witness.

Even if it were possible, under the trial court's discretion, to view Cupic's testimony as "surprise" testimony that was not expected from that particular witness, we still would conclude that the defendants failed to establish good cause because the medical opinion that Christian would need surgery in the future was not a surprise at all. Iversen is a physician, she was designated as an expert, and her expert report was provided to defense counsel years before trial. Her expert report detailed her opinion that Christian required future surgeries. Thus, the defendants were aware that Christian's position at trial was that he needed future surgeries. With that knowledge, the defendants designated an expert and specifically noted that he would be used to "rebut" Iversen's testimony—they designated Vanderweide. The possibility of needing to rebut expert testimony on future surgeries was not a surprise. It was reasonably and actually anticipated by the defendants, and they acted on that knowledge by designating Vanderweide.

Defendants made a trial-management decision to rely on Vanderweide's deposition testimony instead of calling him live at a cost of $10,000. During

14

Vanderweide's deposition, the defendants specifically asked him about Iversen's opinions on future surgeries, and Vanderweide testified that he disagreed with her and that there was no medical basis for suggesting that Christian would need surgery.

Granted, the defendants were not able to ask Vanderweide at the pretrial deposition for his reaction to Cupic's testimony about the possibility of future surgeries because the defendants appear not to have deposed Cupic and did not know what his trial testimony might be. But the idea of medical testimony that future surgeries would be needed was present, was included in Iversen's already-produced expert report, and was discussed in Vanderweide's deposition, meaning the need for rebuttal testimony was anticipated, and Vanderweide was designated to supply that testimony. *Rankin*, 266 S.W.3d at 514–15 (because party knew what other expert would testify to, they knew that, if they disagreed with that testimony, they were obligated to disclose a witness to rebut the testimony). On this basis, we reach the same conclusion: the defendants fail to establish good cause for presenting an undisclosed witness on this same topic. While the possibility of having an expert who was already being paid to appear live at trial slide in and replace, without designation, another expert who would have charged an "exorbitant" fee for live testimony may be appealing, it is not good cause.

And even if we were to allow for the possibility that the trial court viewed live rebuttal testimony as warranted, we remain unconvinced that the record supports a good-cause finding because the defendants failed to show why Vanderweide could not testify in rebuttal on any of the four remaining days of trial—as he had been designated to do. *See Melendez*, 998 S.W.2d at 276 (noting that tactical decisions to wait and call a witness as a rebuttal witness when the party could anticipate the need for the testimony does not establish good cause); *see also In re Commitment of Stevenson*, 2013 WL 5302591, at *7 (finding significant that "there is nothing in the record to explain why other expert witnesses that Stevenson timely designated could not have explained" the opposition to opposing experts). Vanderweide was disclosed as an expert on this topic. The defendants chose to rely on deposition testimony instead of calling him live. Dissatisfaction with that trial-management choice is not good cause.

In sum, Iversen testified as expected. Cupic provided an opinion he had never previously been asked to give. And Vanderweide, a local physician, was timely designated as a rebuttal witness on the very topic for which the defendants wanted rebuttal testimony. Five days of trial remained when Cupic testified. According to defense counsel, when the issue was raised for the first time the Monday after Cupic's Thursday appearance, Vanderweide was "not available" and Murphy was needed to testify instead. But four days of trial remained. There is

16

nothing in the record to indicate Vanderweide was not available any of those days. He offered to be available in his deposition, and the record discloses he practices in the Houston area. On this record, we conclude that the defendants failed to establish good cause.

**D.  Defendants failed to establish a lack of unfair surprise and prejudice**

It is a significant, unanticipated event to have an undisclosed medical doctor take the stand and provide expert medical opinions on the fly about a plaintiff he has never met or evaluated. The undisclosed expert witness, Murphy, testified that Christian's nine documented herniations were due to genetic degeneration, meaning he challenged causation, not just the need for future surgery.

Defense counsel asked Murphy to testify to his "qualms" about a doctor—meaning Cupic—"com[ing into] court without ever having noted in their records a need for surgery, any restrictions, and then . . . say[ing] that the man needs two, three-level instrumented fusions." Counsel asked Murphy, "Is it medically responsible?" Aside from the mischaracterization of Cupic's testimony, the prejudice is in the response: Murphy testified that Christian's treating physician was not being medically responsible in providing his trial testimony. In other

words, Murphy, as an expert, told the jury that Christian's treating physician was medically irresponsible.[2]

The defendants brought in an undisclosed witness to impugn the credibility and professional competence of another witness whose testimony they perceived as harming their trial position. That prejudiced Christian.

To the extent defendants maintain that Cupic's expert opinions went beyond his medical records, the defendants could have objected and sought to limit Cupic's testimony. Their failure to do so is in line with our view that there was no inconsistency. Or the defendants could have requested a continuance if Vanderweide was unavailable every day of the five trial days between when Cupic testified and when the trial ended. They did not. That Murphy was there and could be relied on to say what Vanderweide would have said if paid to be there is not a valid basis for permitting this type of witness substitution that unfairly surprised and prejudiced Christian.

Murphy's testimony went to the central issue in the case: whether Christian would need surgeries and whether the damages that would be awarded, if any, should include a recovery for future surgeries and related medical costs. Vandeweide had not testified that Christian's nine herniations would disappear.

---

[2]    Likewise, defense counsel makes a lengthy argument in their appellate brief that Cupic was dishonest in his medical records, violated ethical duties, violated professional guidelines, and failed to make Christian's well-being his primary concern.

18

Instead, Vandeweide had conceded that herniations can be painful and that asymptomatic herniations can become symptomatic as a result of trauma.

Murphy's live testimony went beyond what the disclosed expert witness—Vanderweide—had opined. Murphy displayed Christian's MRI images and dissected them in front of the jury, without the defendants having disclosed his medical opinions pretrial. Murphy then opined, by agreeing with defense counsel's phrasing, that Christian's nine documented disc herniations "will heal themselves essentially."

Defendants' designated expert witness had left open the possibility of subsequent medical needs. The undisclosed witness, on the other hand, opined that there was no causation and definitively no future medical needs. Then, the jury awarded no future damages.

We conclude that Murphy's testimony unfairly surprised and prejudiced Christian. *See Alvarado*, 830 S.W.2d at 915 (a party "is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper interrogatory" (quoting *Sharp v. Broadway Nat'l Bank*, 784 S.W.2d 669, 671 (Tex. 1990))); *cf. State v. Target Corp.*, 194 S.W.3d 46, 51 (Tex. App.—Waco 2006, no pet.) (trial court abused its discretion by excluding late designated expert when adverse party had his report timely, deposed him twice, and had adequate opportunity to explore basis for

19

opinions). Likewise, it meets the harm threshold in that it probably caused the rendition of an improper judgment. *See Jurek*, 2009 WL 179204, at *4 (in considering harm, noting that undisclosed witness's testimony was "highly influential" to the factfinder who awarded damages equal to the figure the expert suggested). Thus, we conclude the trial court abused its discretion in permitting an undisclosed expert witness to testify.

We sustain the first issue. When we sustain an evidentiary issue, we remand for a new trial, which sometimes can moot appellate issues related to trial management, like the second issue in this appeal. Here, though, our resolution of issue one does not permit a retrial for George, who is unaffected by that ruling. Therefore, we must consider the second issue regarding whether the trial court abused its discretion in denying the plaintiffs' request to call a defendant corporate representative after resting.

## Corporate Representative

The second issue is whether the trial court abused its discretion in denying the plaintiffs' request to call Oceanwide America's corporate representative to supply testimony in support of the plaintiff's damages claim after the plaintiffs rested.

The plaintiffs explained to the trial court the reason for their request. They noted that the maritime concept of "maintenance and cure" was an issue in their

cases, and they were required to put into evidence the extent to which the defendants failed to satisfy their maintenance and cure payment obligations between the date of the plaintiffs' injuries and trial. They intended to elicit some of this testimony from the Oceanwide corporate representative, James Ireland. Ireland was the only corporate representative designated by Oceanwide America, and he was in the courtroom during the trial.

The issue of why the plaintiffs did not call Ireland during their case in chief was raised. Plaintiffs' counsel explained that defense counsel told them earlier in the trial that he was going to call Ireland to testify live during the defense's presentation of evidence. On that information, the plaintiffs' counsel did not call Ireland as a witness, deciding, instead, to cross-examine Ireland when the defendants called him to the stand.

Throughout their briefing, the defendants diminish the referenced conversation between counsel by referring to it as "some sort of agreement," an "alleged agreement," a "so-called agreement," and an "agreement excuse." But, at the hearing on plaintiffs' motion for new trial, defense counsel agreed that plaintiff's counsel had asked whether he was going to call Ireland during his evidence presentation, and defense counsel responded, "Yeah, I'm going to call Jim."

Christian and George's argument on appeal is that they should have been permitted to rely on defense counsel's representation, and if defense counsel did not call the witness, then they should have been allowed to call him themselves even if the need to do so occurred after they rested. They contend the trial court abused its discretion in refusing their efforts to call the witness.

Oceanwide America's argument in response is that its counsel is permitted to make a "strategic decision not to call" Ireland after the plaintiffs "fumbled" the matter when they "relied on the belief that [the defendants] were going to call Mr. Ireland during Oceanwide's case-in-chief." Oceanwide America's counsel argues that they are "free to pursue a strategy deemed appropriate for their clients, especially when faced with an opposing antagonistic position" from plaintiffs' counsel, who were not at their "first rodeo."

Christian and George note that they were relying on defense counsel's statement as an officer of the court. Defense counsel elided that topic, noting instead that it was part of Christian and George's case in chief and they could have called Ireland as a witness, but "they chose not to."

The trial court did not permit Christian and George to call Ireland as a witness, and they have appealed that ruling. While we have concerns about a defense attorney confirming mid-trial that a witness will be called during the defense's presentation of evidence, taking a perceived advantage from the

22

plaintiffs' reliance on that statement by not calling the witness, thereby avoiding any evidence that might have been solicited from the witness's testimony, and then equating the matter to a "strategic" choice afforded by opposing counsel's "fumble" of the situation, we have concluded that the issue does not present a basis for reversal.

Christian and George argue that they have been harmed by the denial of this testimony because "the jury did not have an opportunity to factor [Oceanwide America and Gabriella USA]'s failure to pay maintenance and cure when determining punitive damages" and the inability to present "testimony in support of their punitive damages claim for failure to pay maintenance and cure caused undue harm."

But neither Christian nor George was awarded any punitive damages. While it is true the jury found that Oceanwide America and Gabriella USA should be liable for punitive damages, those two entities later filed a motion for JNOV on the argument that punitive damages were not recoverable, and the trial court entered a final judgment that did not award any punitive damages. Christian and George do not appeal the absence of punitive damages in the final judgment.

Under these circumstances, we must conclude that Christian and George's argument that the trial court's evidentiary ruling harmed their ability to increase the size of their punitive-damages award must fail, given that there were no

23

punitive damages awarded in the final judgment and that omission is not raised on appeal. *See* TEX. R. APP. P. 44.1(a).

Moreover, no defendant entity was found liable for George's injuries, which means that he has no basis for recovery of punitive damages. *See Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex. 1985) ("Punitive damages are recoverable only after proof of a distinct, willful tort."). And Christian has already established error requiring a new trial on his claims, at which time the trial court will decide the discretionary evidentiary issue under the then-present facts, making this challenge presented under the reversed-trial's facts moot.

Because the trial court's ruling that prohibited Christian and George from eliciting trial testimony from the Oceanwide America's corporate representative provides no basis for reversal, we overrule this second issue.

## Conclusion

Having sustained issue one, which only impacts Christian, we reverse the judgment as to him and remand for a new trial. Having overruled the remaining issue, we affirm the judgment as to George.

Sarah Beth Landau
Justice

Panel consists of Justices Keyes, Lloyd, and Landau.

24